THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN DE JESUS, Appellant.

First Department, April 24, 1984

APPEARANCES OF COUNSEL

*Susan Corkery* of counsel (*Norman Barclay* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Norman L. Reimer* of counsel (*Gould & Reimer,* attorneys), for appellant.

OPINION OF THE COURT

SANDLER, J.

At about 9:30 P.M. on November 23, 1980, Angel Rodriguez, operator of a social club at 508 East 12th Street, was shot to death in the club. Indicted for the homicide, the defendant was convicted after a jury trial of murder in the second degree. The prosecution's case rested essentially on the testimony of two witnesses.

Norman Diaz testified that he was in the hallway of the building adjoining that in which the social club was located when he heard a shot followed by what he believed, apparently erroneously, to be a second shot. He went outside the building, observed people running, and then saw to his right, near the entrance to the social club, a man with a gun pointing in his direction. The man with the gun placed his finger to his lips in what the witness took to be a direction to be quiet. The witness retreated into the building, last observing the man putting the gun into his waistband, and looking "panicky like". Diaz recognized the man as the defendant, someone he had seen on several occasions before and whom he knew by the name "Junior".

The second witness, Carmen Garcia, was the only eyewitness to the homicide to testify. She had testified before the Grand Jury that she saw a man, whom she knew from the neighborhood, enter the social club at about 9:30 P.M., heard an argument between the man and the deceased with regard to the closing of the door to the club, saw this man shoot the deceased with a silver pistol and then leave. From an array of photographs exhibited to her at the Grand Jury, she identified a photograph of the defendant as the shooter. Her testimony at trial was essentially the same, although in some respects the answers were somewhat more hesitant and sketchy, until she was asked to look at the defendant and state whether she recognized him. She then said: "Nope, it looks like, but it's not."

The court granted permission to the District Attorney to impeach the witness under the authority of CPL 60.35. The District Attorney then read to the witness questions and answers from her Grand Jury testimony covering in essence the period from the shooter's entry into the social club until his departure after the shot was fired. He elicited from the witness that she had identified a photograph of the defendant before the Grand Jury, and was permitted to introduce into evidence the photographic display that had been exhibited to the witness at the Grand Jury, including the photograph of the defendant which she had identified.

The principal issue on this appeal is raised by the defendant's contention that the court erred in permitting the District Attorney to impeach the witness on the basis of

her Grand Jury testimony, and that to the extent to which any impeachment was authorized by CPL 60.35 the District Attorney was allowed to exceed the permissible limits of impeachment examination permitted by that section. We are satisfied that impeachment of the witness was clearly authorized under the circumstances by CPL 60.35, and that the scope of the examination permitted represented an appropriate exercise of discretion by the trial court. To the extent to which a few of the questions put to the witness raised issues not entirely free from doubt, we are persuaded that nothing occurred that could be evaluated as reversible error under all the circumstances. We also find that the evidence was circumstantially sufficient to sustain the jury's verdict; the testimony of Diaz, coupled with Carmen Garcia's testimony that the defendant looked like the shooter, being sufficient to present an issue for the jury.

CPL 60.35 (subd 1) provides: "When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony."

Under the circumstances detailed above, the trial court was clearly correct in its ruling that impeachment of Carmen Garcia on the basis of her Grand Jury testimony was authorized by CPL 60.35. The witness' trial testimony that the defendant was not the shooter clearly tended "to disprove the position" of the District Attorney, the party who had called the witness. Her Grand Jury testimony, in which she identified a photograph of the defendant as that of the killer, was obviously contradictory to her trial testimony. We find wholly unpersuasive the contention that a previous photographic identification of the defendant, because of the lesser reliability attaching to photographic identifications, is not contradictory to trial testimony based on visual observation that defendant is not the responsible person. The photographic character of the Grand Jury identification presents a factual issue for the

jury's consideration; it does not eliminate as a matter of law the obviously contradictory character of that testimony.

Nor do we see any merit to the contention that it was error to permit the introduction into evidence for the jury's inspection the photographic display which had been exhibited to the witness before the Grand Jury, and from which she had selected the defendant's photograph. It was surely of critical importance to the jury in assessing the weight of the impeachment examination to be permitted to determine the fairness of the photographic display and the extent to which the photograph of the defendant in fact resembled the man they observed in court. Those decisions which have found error in permitting a witness to testify to a prior photographic identification involved legal issues remote from those presented in this case, and seem to us wholly irrelevant.

Also without merit is the defendant's contention that impeachment was not permissible because the District Attorney was not surprised by the testimony of the witness, the witness having expressed prior to her trial testimony apprehension in testifying and having intimated that she might not tell her story in court. CPL 60.35 includes no requirement that the party calling the witness be surprised by the testimony of the witness. Nor is any such requirement set forth in *People v Fitzpatrick* (40 NY2d 44), the authority relied upon for this contention. *Fitzpatrick* held that testimony by a witness denying any recollection of matters which had been the subject of a prior statement was not testimony that "tends to disprove the position" of the party calling the witness. That holding is clearly inapplicable here. This is not to say that there may not be circumstances in which the absence of surprise may raise a question as to the good faith of a District Attorney in calling a witness. No such issue of good faith is presented here.

Nor do we believe that error occurred when the trial court permitted the District Attorney to question the witness with regard to Grand Jury testimony not directly contradictory to her trial testimony. CPL 60.35 is not sensibly interpreted as requiring the separation of a single

contradictory statement from the context which gives it meaning and which is clearly relevant to an appreciation of the significance of that which is contradictory. The Grand Jury testimony which is here challenged as not being in itself contradictory covers a very small period of time immediately surrounding the critical, and contradictory, part of the witness' testimony — the entrance of the shooter into the social club, the immediate argument between the shooter and the deceased, the firing of the shot, and the killer's departure. None of the objected to examination is independently inculpatory of the defendant, and all of it would seem to us testimony that the trial court could reasonably have believed to be appropriate to the jury's evaluation of that which was contradictory.

Of course, a District Attorney is not permitted to roam far and wide through a prior statement to rehash inculpatory testimony that is not contradictory to the trial testimony, or even more objectionably, to describe inculpatory testimony that was not the subject of trial testimony. What occurred here was limited in scope and represented an appropriate exercise of discretion by the trial court.

A quite separate question is raised by the defendant's contention that it was improper to permit the District Attorney to question the witness with regard to several statements she had made expressing a reluctance to testify as a result of fear. This kind of impeachment is not addressed by CPL 60.35, which is concerned with impeachment on the basis of previous statements contradictory to trial testimony tending to disprove the position of the party who called the witness. Under the circumstances presented here, in which the testimony of the witness was extremely damaging, the District Attorney had a good-faith basis for believing it to be false, and he knew of facts that would explain the reason for the witness to give false testimony, it is difficult to see any realistic basis for excluding cross-examination with regard to such circumstances so long as it is carefully limited to its legitimate purpose. Certainly nothing in CPL 60.35 can be fairly interpreted as prohibiting this kind of impeachment, and our attention has been called to no clear authority that would exclude it. It is true that in *People v Wright* (41 NY2d 118, 120) there was a

passing comment describing as "questionable" the asking of similar questions in a related but different context. But the circumstances disclosed by the opinion of the Court of Appeals in *Wright* are very different from those presented here, and we are not persuaded that the court's passing comment was intended to establish a principle of general applicability.

Finally, it is argued that reversible error occurred when the District Attorney on redirect examination elicited from the witness that she had identified a photograph of the defendant when first questioned by the police, and that she repeated this identification to the District Attorney when he visited her in her home. These questions, however, must be considered in the light of the cross-examination of the witness by defense counsel who had undertaken to establish that she was a confused, emotionally disturbed person, under psychiatric care, and taking medication, who over a period of time had been pressured by the police to give testimony against the defendant in the face of disclaimers of knowledge, and whose Grand Jury testimony resulted from her having been worn down by sustained pressure. The issue presented by this aspect of the redirect examination is not directly addressed in CPL 60.35. However, we think it clear that where the defense undertakes in cross-examination to undermine and depreciate the value and significance of properly admitted impeachment testimony, the District Attorney may appropriately attempt to elicit from the witness testimony that establishes the false and misleading character of this attack and that affirms the value and relevance of the impeachment testimony.

It may well be that it would have been here a sufficient response to have elicited that the witness had identified a photograph of defendant when first questioned, and that it was unnecessary and perhaps excessive to have permitted questions as to what she had thereafter told the District Attorney. On balance, we do not perceive in this arguably excessive response an error that would justify reversal of the conviction.

Therefore, the judgment of the Supreme Court, New York County (Leon Becker, J.), rendered February 16, 1982, convicting defendant after a jury trial of murder in

the second degree and sentencing him to an indeterminate term of 15 years to life, should be affirmed.

LYNCH, J. (dissenting). I would reverse the judgment convicting the defendant of murder in the second degree and order a new trial.

At the trial, the prosecution's principal witness, Carmen Garcia, testified that a man with a silver pistol shot "Mayaguez" Rodriguez inside a social club operated by the victim. When asked to identify the defendant as the assailant, she admitted that she knew the defendant from the neighborhood but stated that, while the defendant looked like the assailant, he was not the man. The court then properly permitted the prosecution to seek to impeach Garcia's testimony (see *People v Fitzpatrick,* 40 NY2d 44) but the impeachment improperly and prejudicially exceeded the bounds of permission.

CPL 60.35 (subd 1) permits impeachment by evidence of contradictory testimony made under oath. Garcia's testimony before the Grand Jury was essentially identical to her trial testimony except that before the Grand Jury she had identified the defendant as the one who shot Mayaguez. Instead of limiting the impeachment evidence to the contradictory testimony, the prosecution read to the trial jury nearly all of Garcia's Grand Jury testimony, contrary to the statutory authority and thus improperly bolstering the credibility of Garcia's identification before the Grand Jury (see *People v Knatz,* 76 AD2d 889). The trial court's instruction limiting consideration of this evidence to the issue of credibility did not correct this error because the improper bolstering was of the witness' credibility itself at the Grand Jury.

I find also that the evidence of the witness Garcia's prior photographic identification of the defendant, received over objection, exceeded the statute's limits on impeachment evidence. When the prosecutor read to the jury Garcia's testimony before the Grand Jury, it was revealed that she had identified the defendant as the murderer from photograph seven of an eight-photograph array. So confronted at the trial Garcia admitted this identification but claimed that she was under treatment and medication and was confused at the time. She said that she was certain of her

Grand Jury identification when given but was not sure at the time of the trial. The photographic array alluded to was then offered by the prosecution and received in evidence.

Prior to the trial Garcia had had no opportunity to identify the defendant in person as the murderer. When she testified at the trial that the defendant looked like the man who had shot Mayaguez but was not, it cannot be deemed contradictory of her prior identification of a photograph. It cannot be truly contradictory for her to have said, viewing the photograph, that the man was the assailant, but, viewing him in person, realized that, despite the resemblance, he was not. That is one reason that "[i]t is settled * * * that a witness may not testify regarding a photographic identification of the defendant" (*People v Lindsay,* 42 NY2d 9, 12; *People v Caserta,* 19 NY2d 18; cf. CPL 60.25 which permits limited admissibility of prior corporeal identifications without provision for prior photographic identification).

The prosecution could have avoided the prejudice and uncertainty of a photographic identification by having held a corporeal lineup since the defendant was in custody at the time of the photographic identification. This suggests that the tainted evidence was resorted to for the "overriding purpose * * * [of resolving] a dilemma which the People themselves had created" (*People v Lindsay, supra,* p 12).

ASCH, SILVERMAN and ALEXANDER, JJ., concur with SANDLER, J. P.; LYNCH, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered on February 16, 1982, affirmed.