(March 17, 1994)

■ The People of the State of New York, Respondent, v David M. Wieber, Appellant. [609 NYS2d 398] —Mikoll, J. P. Appeal from a judgment of the County Court of Schenectady County (Harrigan, J.), rendered April 10, 1992, upon a verdict convicting defendant of the crimes of assault in the first degree, grand larceny in the second degree, coercion in the first degree and assault in the third degree (two counts).

Harold Hilts, an 85-year-old man, was found comatose on January 28, 1990 in his home which he had shared for some time with defendant. His body was bruised on the arms, feet, legs and upper chest, and he had broken ribs. Some of the injuries predated January 28, 1990. On January 26, 1990, Hilts had executed a deed in which he and defendant became joint owners with right of survivorship in Hilts' home. The medical evidence and other proof in the record, both direct and circumstantial, discloses long-standing physical abuse and intimidation of Hilts by defendant. This included striking Hilts on the ear in which he wore a hearing aid (causing bleeding), recent and older contusions of the chest and upper arms, legs and foot (apparently caused by force and pressure to the chest and upper arms, poking to the chest area, and kicks to the legs and foot), and loud and abusive language directed at Hilts by defendant. There was evidence that on January 28, 1990, Hilts was grabbed under his armpits, lifted up and propelled forward into a door by defendant.

Defendant was subsequently indicted for assault in the first degree (two counts), assault in the second degree (three counts), assault in the third degree, grand larceny in the second degree and coercion in the first degree. On motion of defendant before trial, County Court dismissed the second count in the indictment charging assault in the first degree, the fifth count charging assault in the second degree and the sixth count charging assault in the third degree. After trial, the jury found defendant guilty of assault in the first degree under the first count; not guilty of assault in the second degree as charged in the third and fourth counts of the indictment (submitted to the jury as the second and third count at trial) but guilty of assault in the third degree as a lesser included crime of each assault in the second degree count; and guilty of grand larceny in the second degree and coercion in the first degree as charged in the seventh and eight counts of the indictment, respectively (submitted to the jury as the fourth and fifth counts at trial).

This appeal brings on for review a number of issues. We address them ad seriatim. Defendant contends that the People improperly used Grand Jury testimony to impeach their main witness, Michelle DeLavic, knowing full well that she had recanted her Grand Jury testimony and that this constituted bad faith on the part of the prosecutor rendering the testimony inadmissible pursuant to CPL 60.35. DeLavic was defendant's girlfriend during the time in issue and married him in April 1990 after he had been indicted.

The issue of good faith in the context of recanted Grand Jury testimony depends on whether the prosecutor calls the witness solely or primarily in order to impeach the witness and thereby place otherwise inadmissible evidence before the jury (see, e.g., People v Huber, 144 AD2d 583, lv denied 73 NY2d 922; see also, People v Magee, 128 AD2d 811, lv denied 70 NY2d 650).

DeLavic was the sole eyewitness to the events relating to the infliction of most of Hilts' injuries as Hilts went into a coma as a result of defendant's actions on January 28, 1990 and never recovered consciousness before his demise 16 months later. In her testimony, DeLavic provided independent testimony favorable to the People's case that defendant often yelled at Hilts, that he slapped his ear in which he wore a hearing aid, causing it to bleed, and that defendant became agitated at the possibility of Hilts selling his house to someone else. This evidence was incriminating as to defendant's actions

and state of mind. It cannot be said that in summoning DeLavic to elicit such evidence the People acted in bad faith. DeLavic had testified before the Grand Jury on two occasions, February 13, 1990 and February 15, 1990. She had recanted only her February 15, 1990 testimony. In seeking to elicit information from DeLavic as to other incidents of physical abuse of Hilts by defendant, the prosecutor could reasonably anticipate that she would supply such information based on her Grand Jury testimony of February 13, 1990. Such expectations were reasonable and reinforce the conclusion that DeLavic was not called to testify in bad faith. We conclude that County Court did not err in allowing the People to impeach DeLavic's testimony.

Defendant also argues that admission of certain portions of DeLavic's Grand Jury testimony was improper because the probative value of this testimony was outweighed by its undue prejudicial harm to defendant. We note prefatorily that DeLavic only recanted a portion of her Grand Jury testimony, was permitted to testify to alleged pressure tactics applied by the People regarding her testimony on February 15, 1990, that her testimony damaged the People's case and that the prosecutor attempted in good faith to refresh her memory without revealing to the jury the contents of her Grand Jury testimony. Significantly, County Court limited the sections of the Grand Jury testimony that could be introduced and gave appropriate limiting instructions to the jury several times. We find that under these circumstances the introduction of DeLavic's testimony was not unduly prejudicial as to constitute an abuse of the court's discretion. We find defendant's reliance on *People v Russ* (79 NY2d 173) to be misplaced. The dissimilarity in the circumstances of the two cases and the egregious acts perpetrated by the officers in *Russ* (arresting a recanting witness during the trial and charging him with perjury) make it inapplicable to this case.

Defendant also contends that the People changed the theory of their case by offering evidence that Hilts' coma resulted from a heart spasm induced by fear. Defendant further urges that the evidence presented was legally insufficient to prove assault in the first degree. We find that the People's theory at all times was that defendant's assault on Hilts caused serious physical injuries, including "bruises, contusions, fractured ribs, head trauma, respiratory distress leading to brain anoxia and coma". Whether the brain anoxia and coma resulted physiologically from respiratory distress, heart spasm or some other form of heart attack does not change the People's theory

of the case (cf., *People v Smith*, 161 AD2d 1160, 1161, *lv denied* 76 NY2d 865).

Defendant also contends that the People changed their theory as to the coercion and grand larceny counts of the indictment and that they did not prove the allegations in the indictment and the bill of particulars. The indictment charged defendant with grand larceny and coercion of Hilts to convey an interest in real property by threats of physical injury. The bill of particulars specified defendant's acts as all the prior beatings alleged. Defendant's argument that the People were limited by their bill of particulars to proof of only the ear slapping incident to establish grand larceny in the second degree and coercion in the first degree is rejected.

The order of County Court, made after selection of the trial jury, denied the application of the People to amend the bill of particulars to include the following language: "The acts of the defendant include prior beatings, acts of poking, verbal threats, and the use of obscene intimidating words or gestures, and loud and threatening language over a period of time culminating on January 28, 1990." We note that proof of these matters was admitted into evidence by County Court. Defendant should have moved to strike it from the jury's consideration. Notwithstanding the court's denial to amend, a careful reading of the bill of particulars demonstrates that its language was sufficient to permit such proof into evidence. The fact that the bill of particulars at the time it was executed referred to acts of kicking, kicks in the leg and injury by means of defendant's foot (alleged in counts of the indictment subsequently dismissed by County Court), and acts alleged elsewhere in the bill of particulars, was sufficient to allow evidence of acts of poking and of verbal acts including obscene language. The original count No. 2 of the indictment alleged that the acts of beatings and kickings occurred on or about and between the middle of December 1989 and January 28, 1990. The bill of particulars should be read in its entirety in interpreting the scope of the term "all of the prior beatings alleged" and, read in that light, it is sufficient to allow the People's evidence concerning coercion.

County Court had previously found that the bill of particulars was an adequate response to defendant's demand for a bill of particulars in its order of September 7, 1991 deciding defendant's motion to reargue its omnibus motion, which was first argued on October 10, 1990 and decided April 25, 1991. During argument held on October 22, 1991, County Court remarked that the term poking is included in the term beat-

ing. Moreover, defendant cannot claim surprise as he had also been furnished with DeLavic's Grand Jury testimony and her sworn statement to the police as *Brady* material well before trial. The investigator for defendant's case additionally had taken a statement under oath from DeLavic as part of defendant's investigation. This material clearly informed defendant of the incidents that the People would rely on during trial. Consequently, defendant was not harmed by the proof of beatings that County Court allowed the People to place in evidence.

Significantly, DeLavic in her testimony went further than merely answering whether her Grand Jury statements were made by her and were false. She gave explanations and comments which the trial jury could find constituted evidence in chief. The trial jury was free to determine under the ordinary rules of evaluating evidence that her evasiveness, false explanations and inconsistencies concerning how Hilts was injured, her courtroom demeanor, gestures and comments could, in view of the other evidence, constitute admissible evidence as to what occurred. DeLavic's testimony that she was compelled to testify falsely before the Grand Jury could be rejected as not credible by the trial jury, and the jury could infer that some statements were in fact admitted by her.

The evidence submitted by the People established that defendant engaged in a course of verbal and physical abuse of Hilts causing submission to defendant's persistent efforts to gain half ownership of Hilts' property. The record is replete with proof of defendant's physical and intimidating behavior toward the aged Hilts, including the use of force against him in front of witnesses Daniel Noonan and David Toussaint; his constant pressure on Hilts not to sell the house; his violent reaction to Hilts' observation that his will may be challenged by the family; and defendant's desire to have an interest in Hilts' property in return for the repairs he was to do on the property. Testimony indicated that after defendant began to live in Hilts' house, a dramatic change occurred in Hilts' behavior: he became withdrawn, unfriendly, of low self-esteem, subject to defendant's control and influence, and ultimately consented two days before the final injuries were inflicted on him to having a deed drawn by defendant's counsel.

In reviewing the evidence, this Court must credit the People's witnesses and give the People the benefit of every reasonable inference to be drawn therefrom *(see, People v Marin,* 65 NY2d 741). Accordingly, we find sufficient direct and circum-

stantial evidence provided by the neighbors, Toussaint, the attorneys involved in the transaction, Assistant District Attorney Gary McCarthy and DeLavic concerning defendant's words, actions and course of conduct from which the jury could conclude that defendant obtained Hilts' signature on the deed on January 26, 1990 by implied threats to do him physical injury. Significantly, when Hilts' own attorney would not place defendant's name on Hilts' deed as security for the work defendant was to do on the house, defendant, along with DeLavic, took Hilts to another attorney, who was a stranger to Hilts and who then drew up the new deed with defendant's name on it. We conclude that the evidence here was sufficient to support the jury's verdict finding defendant guilty beyond a reasonable doubt of grand larceny in the second degree and coercion in the first degree.

Defendant asserts that the evidence was insufficient to convict him of assault in the first degree, to establish the identity of defendant as the assailant or that he possessed the requisite mens rea. Defendant also maintains that the People failed to demonstrate Hilts' injuries were inflicted on that date, that the evidence is wholly circumstantial and does not exclude to a moral certainty that DeLavic was the assailant. We disagree.

The proof is not wholly circumstantial inasmuch as DeLavic was present at the time the incident occurred on January 28, 1990 and testified concerning it. Although her testimony was largely disputed and in conflict with her prior testimony and other evidence, the jury could accept any of it that it found credible. The jury could accept that portion of DeLavic's trial testimony that she saw defendant pick up Hilts and walk with him, that she saw defendant's back muscles tighten up as he gripped Hilts under his armpits, that then something happened and Hilts went flying into a closed door across the way, that Hilts "went flying all by himself, just flew across the hall". DeLavic said that defendant "must have let go of him somehow from holding on to him". Thus, the jury could conclude, based on the medical testimony, the false and conflicting stories told by defendant and by DeLavic to the emergency room physician and others, that defendant recklessly caused Hilts' injuries by propelling him or causing him to be propelled forward to strike a door and the floor. Considering Hilts' age, his frailty, that he was in poor health, submissive and without resistance, and the evidence of the injuries to his chest area including his ribs, legs and foot, the use of such force and pressure in gripping Hilts and in

propelling him against the door could be found to be evidence that defendant recklessly engaged in conduct which created a grave risk of death to another under circumstances evincing a depraved indifference to human life (Penal Law § 120.10 [3]).

The jury verdict is also supported by defendant's own false statements to the emergency room physician and others explaining in different ways how the injuries occurred, ways at times inconsistent with the expert medical testimony and other facts and circumstances. Defendant's false statements to the physician at the hospital were made in the presence of and with the concurrence and assent of DeLavic. Instead of answering the physician's questions concerning what happened to Hilts that night to assist the doctor in treating Hilts, defendant said that Hilts "had fallen down and gotten wedged next to the toilet". Defendant then stated that he would not say anything further until he talked to his lawyer. At that time DeLavic said to him, "you had better not tell him anything more". Defendant was shown to have told others false statements as to how Hilts sustained his injuries. The medical evidence and the inferences flowing from the direct and circumstantial evidence all point to defendant's guilt of the assault charges of which he was found guilty.

It was stated in *People v Benzinger* (36 NY2d 29, 33) that in such circumstances "it is difficult to come to any other conclusion than that these false statements indicate a consciousness of guilt". On the facts of this case, as in *Benzinger,* "it is reasonable to assign a moderate degree of probative force to the false statements" *(supra,* at 34). The weight to be given such statements depends on each individual case *(supra).* In the case at bar the medical evidence established that the leg and foot bruises and contusions were recent, as well as the chest bruise and some fractured ribs, and were caused by pressure, squeezing, kicking and punching. Other rib fractures were older. Hilts was in the company of only defendant and DeLavic during the time period when the injuries were inflicted relative to the incidents on January 26, 1990 and January 28, 1990. Significantly, Mallaiah Setty, a cardiologist, treated Hilts from October 11, 1988 through November 14, 1989. Setty had occasion to examine Hilts' upper torso on October 30, 1989 and November 14, 1989 and found no bruises there. He also examined Hilts' shins on October 30, 1988 and saw no stasis ulcers there. On November 14, 1989 he found that Hilts weighed 132 pounds. There was no credible indication that DeLavic inflicted the injuries and the evidence points only to the guilt of defendant. The evidence indicated that

DeLavic was against the deed scheme and defendant's physical abuse of Hilts although she participated in a cover-up with him.

Mercure, Crew III, White and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.