(December 31, 2008)

■ The People of the State of New York, Respondent, v George Mitchell Jr., Also Known as Popper, Respondent. [871 NYS2d 445]—

Peters, J.

During the early morning hours of June 18, 2005, the victim was shot several times while sitting in the driver's seat of his parked car in the City of Kingston, Ulster County. After a police investigation, defendant was charged by indictment with attempted murder in the second degree, assault in the first degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree (two counts). At trial, the evidence established that shortly after arriving at a bar to meet his friend, Paul Ramos, the victim and others decided to leave the bar to go elsewhere. According to the victim, while waiting in his car for the others to depart, defendant and another individual suddenly appeared on the passenger side of his vehicle. After defendant unsuccessfully attempted to open the door, he

fired seven or eight shots through the passenger side window, four of which struck the victim and two of which pierced the hat he was wearing. Ramos, upon hearing the gunshots, exited the bar and transported the victim to a local hospital where he was treated for his wounds. While at the hospital, drugs were found on the victim and he was thereafter taken to the police station, where he made a statement and identified defendant as the shooter from a photo array. Following the trial, defendant was convicted as charged and sentenced to an aggregate prison term of 25 years with three years of postrelease supervision, prompting this appeal.

We begin by addressing defendant's contention that the verdict is against the weight of the evidence. The primary issue at trial was the identification of the assailant. The victim testified unequivocally that it was defendant who fired the shots, recognizing him as the same person he had seen in the bar only moments before and remembering him from a minor altercation that arose a few weeks earlier. Upon cross-examination, the victim acknowledged that while in jail following the incident, he had written a letter to another inmate in which he stated that it was not defendant, but defendant's brother, who shot him. According to the victim, that information was completely false, and was set forth only to avoid being known as a "snitch," because he was concerned for his safety. Conflicting identification testimony was provided by Raymond Snyder, the only other eyewitness, who testified that he saw the shooter and that it was not defendant. Additionally, Ramos testified that he was inside the bar when the shots were fired and that defendant was also inside, explaining that he was specifically watching defendant because he perceived him as a threat.

Succinctly stated, the conflicting testimony at trial presented "a classic credibility issue" for the jury to resolve (*People v Allen*, 13 AD3d 892, 894 [2004], *lv denied* 4 NY3d 883 [2005]). The contradictions and inconsistencies in the victim's testimony, which were fully explored by the parties and highlighted to the jury, neither render his testimony unworthy of belief nor establish a basis " 'upon which to disturb [the jury's] resolution of these credibility issues' " (*People v Borthwick*, 51 AD3d 1211, 1214 [2008], *lv denied* 11 NY3d 734 [2008], quoting *People v Campbell*, 17 AD3d 925, 926 [2005], *lv denied* 5 NY3d 760 [2005]; *see People v Jegede*, 304 AD2d 850, 851-852 [2003], *lvs denied* 100 NY2d 539 [2003], 3 NY3d 676 [2004]). Although a different verdict certainly would not have been unreasonable, viewing the evidence in a neutral light and according deference to the jury's superior ability to evaluate credibility, "view the

witnesses, hear the testimony and observe demeanor" (*People v Bleakley*, 69 NY2d 490, 495 [1987]; *see People v Moore*, 17 AD3d 786, 789 [2005], *lv denied* 5 NY3d 792 [2005]), we cannot say that the verdict is contrary to the weight of the evidence

We do, however, find merit in defendant's contention that the People were improperly permitted to impeach Snyder, their own witness, with his prior inconsistent statement. While "[a] party may impeach its own witness if such witness' testimony on a material fact tends to disprove the party's position or affirmatively damages the party's case" (*People v Saez*, 69 NY2d 802, 804 [1987]; *see* CPL 60.35 [1]; *People v Fitzpatrick*, 40 NY2d 44, 51 [1976]; *People v Bellamy*, 26 AD3d 638, 640 [2006]), the use of the witness's prior statement in this manner must be made in good faith (*see People v Russ*, 79 NY2d 173, 178 [1992]). "The issue of good faith in the context of recanted . . . testimony depends on whether the prosecutor calls the witness solely or primarily in order to impeach the witness and thereby place otherwise inadmissible evidence before the jury" (*People v Wieber*, 202 AD2d 789, 790 [1994], *lv denied* 84 NY2d 834 [1994] [citations omitted]; *see People v Russ*, 79 NY2d at 178).

Here, Snyder provided a statement to police following the incident wherein he, among other things, identified defendant as the shooter. Prior to calling Snyder as a witness, the People notified County Court, out of the presence of the jury, that Snyder had specifically and unequivocally stated that he would recant his prior testimony if forced to take the stand (*see People v Russ*, 79 NY2d at 179; *People v Fitzpatrick*, 40 NY2d at 52-53). Nonetheless, the People were allowed to call Snyder as a witness and, significantly, made no attempt to elicit any testimony relevant to any material issue of the case other than the identity of the shooter (*compare People v Wieber*, 202 AD2d at 790-791). Rather, when Snyder denied that defendant was the shooter, he was immediately impeached by his prior contradictory statement, which was subsequently entered into evidence. As the record makes clear, the primary purpose served by calling Snyder as a witness was to place his otherwise inadmissible prior inconsistent statement before the jury. Moreover, the prosecutor was improperly permitted to roam through the prior statement in minute detail and rehash testimony that was not contradictory to Snyder's trial testimony and which, even more egregiously, bolstered crucial testimony of the People's witnesses (*see People v Jones*, 126 AD2d 974, 974 [1987], *lvs denied* 69 NY2d 1005 [1987], 70 NY2d 649 [1987]; *People v De Jesus*, 101 AD2d 111, 115 [1984], *affd* 64 NY2d 1126 [1985]).

Furthermore, notwithstanding County Court's limiting

instruction (*see* CPL 60.35 [2]), we are of the view that the error was not harmless (*see People v Russ,* 79 NY2d at 177-179; *People v Jones,* 126 AD2d at 974-975). As previously demonstrated, the key issue in this case was the identity of the shooter, and the only evidence implicating defendant was the testimony of the victim. Notably, the prosecutor not only made direct reference to Snyder's statement during his summation, but read the pertinent portions line-by-line to the jury, thus compounding the error (*see People v Lawrence,* 227 AD2d 893, 894 [1996]; *compare People v Andujar,* 290 AD2d 654, 657 [2002], *lv denied* 98 NY2d 648 [2002]). Quite clearly, the quantum and nature of the proof in this case does not overwhelmingly evince defendant's guilt, and we simply cannot say that there is no reasonable possibility that the error might have contributed to defendant's conviction (*see People v Fitzpatrick,* 40 NY2d at 53; *People v Bellamy,* 26 AD3d at 641; *see generally People v Crimmins,* 36 NY2d 230, 237 [1975]).

Since we are remitting for a new trial, we also address the propriety of County Court's *Sandoval* determination. County Court permitted the People to cross-examine defendant regarding the existence and underlying facts of a 1998 conviction for assault in the first degree and a 1995 charge for assault in the second degree. The court also ruled that the People could inquire into a 2005 prior bad act in which defendant was alleged to have stabbed another while at a bar, but only if the People were able to provide a sufficient, nonhearsay basis for raising it, and precluded inquiry into several other prior convictions, including a 2001 assault in the third degree conviction stemming from an attack on a correction officer. In our view, County Court's ruling was "a considered decision which took into account all relevant factors and further struck a proper balance between the probative value of the[ ] convictions on defendant's credibility and the possible prejudice to him" (*People v Davenport,* 38 AD3d 1064, 1065 [2007]; *see People v Grady,* 40 AD3d 1368, 1370 [2007], *lv denied* 9 NY3d 923 [2007]; *People v Johnson,* 24 AD3d 967, 969 [2005], *lv denied* 6 NY3d 814 [2006]). The crimes that were permitted related to defendant's repeated willingness to put his own self-interest above the interests of society (*see People v Quiller,* 298 AD2d 712, 713 [2002], *lv denied* 99 NY2d 618 [2003]; *People v Galvin,* 104 AD2d 527, 530 [1984], *mod on other grounds* 65 NY2d 761 [1985]) and, although similar to the crimes charged here, "similarity alone is insufficient to preclude cross-examination" (*People v Blair,* 32 AD3d 613, 614 [2006]; *see People v Pavao,* 59 NY2d 282, 291-292 [1983]; *People v Massey,* 45 AD3d 1044, 1047 [2007], *lv denied* 9 NY3d 1036 [2008]). While it would have been reasonable for County Court to employ

a *Sandoval* compromise and not permit inquiry into the underlying facts or nature of the prior convictions (*see People v Long*, 269 AD2d 694, 696 [2000], *lv denied* 94 NY2d 950 [2000]), we cannot conclude that the court abused its discretion (*see People v Williams*, 24 AD3d 882, 883 [2005], *lv denied* 6 NY3d 854 [2006]; *see generally People v Hayes*, 97 NY2d 203, 207 [2002]).

Cardona, P.J., Carpinello, Kavanagh and Stein, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Ulster County for a new trial.