People v McCoy (2019 NY Slip Op 01456)





People v Mccoy


2019 NY Slip Op 01456


Decided on February 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 28, 2019

108643

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JEMAR L. McCOY, Appellant.

Calendar Date: January 11, 2019

Before: Lynch, J.P., Clark, Mulvey, Devine and Aarons, JJ.


George P. Ferro, Albany, for appellant, and appellant
pro se.
Weeden A. Wetmore, District Attorney, Elmira (M. Hyder Hussain of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from a judgment of the County Court of Chemung County (Hayden, J.), rendered July 18, 2016, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (three counts) and criminal possession of a weapon in the third degree (four counts).
In 2016, defendant was indicted on three counts of criminal possession of a weapon in the second degree and four counts of criminal possession of a weapon in the third degree and, following a jury trial, was convicted as charged. Defendant was subsequently sentenced, as a second violent felony offender, to three concurrent prison terms of 12 years, followed by five years of postrelease supervision, for his convictions of criminal possession of a weapon in the second degree and lesser concurrent terms on his remaining convictions. Defendant now appeals.
Defendant's challenge to the legal sufficiency of the evidence — specifically, that the evidence adduced at trial did not support a finding that he exercised dominion and control over the area in which the firearms and ammunition were found — is unpreserved for our review, as defendant did not raise this particular argument in the context of his motion for a trial order of dismissal (see People v Taylor, 163 AD3d 1275, 1275-1276 [2018], lv denied 32 NY3d 1068 [2018]; People v Zayas-Torres, 143 AD3d 1176, 1180 [2016], lv denied 30 NY3d 984 [2017]). Nevertheless, in the course of reviewing defendant's contention that the verdict is against the weight of the evidence, we necessarily evaluate whether all elements of the charged crimes were proven beyond a reasonable doubt (see People v Wells, 141 AD3d 1013, 1020 [2016], lvs denied 28 NY3d 1183, 1189 [2017]; People v Oliver, 135 AD3d 1188, 1190 [2016], lv denied 27 NY3d 1003 [2016]). In conducting a weight of the evidence review, we view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, "'weigh the relative probative force of conflicting testimony and the relative strength of [*2]conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence'" (People v Martinez, 166 AD3d 1292, 1293-1294 [2018], quoting People v Jemmott, 164 AD3d 953, 954-955 [2018], lv denied 32 NY3d 1112 [2018]).
With respect to counts 1, 2 and 3 of the indictment, a person is guilty of criminal possession of a weapon in the second degree when that person knowingly possesses any loaded firearm (see Penal Law § 265.03 [3]; see generally People v Saunders, 85 NY2d 339, 341-342 [1995])[FN1]. A "'[l]oaded firearm' means any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm" (Penal Law § 265.00 [15]). As charged in counts 4, 5 and 6 of the indictment, a person is guilty of criminal possession of a weapon in the third degree when he or she knowingly possesses any firearm and has been previously convicted of any crime (see Penal Law §§ 265.01 [1]; 265.02 [1]; People v Jemmott, 164 AD3d at 955; see generally People v Parrilla, 27 NY3d 400, 403-404 [2016]). As charged in count 7 of the indictment, a person is guilty of criminal possession of a weapon in the third degree when he or she knowingly possesses three or more firearms (see Penal Law § 265.02 [5] [i]; People v Saunders, 85 NY2d at 341-342). For all counts, the term "firearm" means any operable pistol or revolver (see Penal Law § 265.00 [3]; People v Longshore, 86 NY2d 851, 852 [1995]). Further, a defendant may be found to possess a firearm through actual, physical possession or through constructive possession (see Penal Law § 10.00 [8]). Constructive possession requires proof "that the defendant exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband is found" (People v Manini, 79 NY2d 561, 573 [1992]; see Penal Law § 10.00 [8]; People v Rodwell, 122 AD3d 1065, 1067-1068 [2014], lv denied 25 NY3d 1170 [2015]).
At trial, defendant's girlfriend testified that, around 2:30 a.m. on a morning in January 2016, she heard someone enter the front door of the duplex apartment that she shared with defendant, her sister, and her and defendant's one-year-old son. The girlfriend stated that she heard the person walk past her bedroom, open the back door and ascend the attic stairs, after which she heard "[b]anging." She stated that she went to the attic to investigate and, although she initially claimed that she did not know who she saw, she ultimately testified that she observed defendant "hammering" one of the steps on the stairway leading to the attic. The girlfriend additionally stated that, when she asked defendant what he was doing, he "told [her] to mind [her] f*****g business and go back to bed," which she did. The girlfriend testified that, the following day, when defendant was out of the house, she pulled up the attic step that she had seen defendant hammering, discovered plastic bags containing three handguns and thereafter summoned her sister to view her discovery. Both the girlfriend and the sister testified that the girlfriend subsequently reported finding the handguns to a state trooper with whom the girlfriend was acquainted and that the state trooper relayed the report to local law enforcement officers, who ultimately responded to the scene and secured the weapons. When testifying, the girlfriend, the sister and a tenant in the downstairs apartment — who had access to the attic — all denied ownership of the handguns.
The responding police officers stated that, upon arriving at the apartment, the girlfriend — who one officer described as "emotional," "panicked" and "scared" — led them to the attic and directed them to a particular attic stair, under which they could see two plastic bags. According to the testimony, while one police officer remained with defendant, who came home at some point during the search, another officer secured from under the stair three firearms, along with associated ammunition — a Smith & Wesson .357 revolver with a quantity of .357 ammunition, a 9 millimeter semiautomatic pistol with a magazine containing 9 millimeter ammunition and a .25 caliber semiautomatic pistol with an "appropriate" magazine containing a quantity of [*3]ammunition [FN2]. As further established by the testimony, all three recovered firearms were test-fired by a police investigator and determined to be operational. Finally, the evidence revealed that, despite testing, no visible or latent fingerprints were found on the firearms and that any recovered DNA was either insufficient or too complex for comparison.
In our view, it would not have been unreasonable for the jury to have acquitted defendant of the charges, given that the evidence established that other people, including the downstairs neighbors, had access to the attic area and that the eyewitness testimony offered by the girlfriend — whose credibility was called into doubt at trial — merely placed defendant in the area in which the firearms were later discovered. However, we emphasize that constructive possession may be established through either direct or circumstantial evidence (see People v McGough, 122 AD3d 1164, 1166 [2014], lv denied 24 NY3d 1220 [2015]) and "may be found 'even though others may have access to [the] premises'" (People v Stewart, 95 AD3d 1363, 1364 [2012], lv denied 19 NY3d 1001 [2012], quoting People v Pinkney, 90 AD3d 1313, 1314-1315 [2011]). Moreover, the girlfriend's credibility was explored and challenged at trial and, notwithstanding her inconsistent trial testimony, the jury ultimately decided to credit her account (see People v Jemmott, 164 AD3d at 956). Viewing the evidence in a neutral light and according appropriate deference to the jury's credibility determinations, we do not find the verdict to be against the weight of the evidence (see People v McGough, 122 AD3d at 1166-1167; People v Stewart, 95 AD3d at 1364; People v Carter, 74 AD3d 1375, 1377-1378 [2010], lvs denied 15 NY3d 772 [2010]; People v Edwards, 39 AD3d 1078, 1080 [2007]).
Defendant also argues that County Court erred in denying his pretrial motion to dismiss the indictment on the ground that the People did not provide him with notice of the pending grand jury proceedings so as to afford him "a reasonable time to exercise his right to appear as a witness" at such proceedings (CPL 190.50 [5] [a]). The record reflects that, at an appearance in Elmira City Court on January 25, 2016, one day after defendant's arraignment on a felony complaint, the People provided both the court and defendant with a notice of prospective grand jury presentment. The record also demonstrates that, at 10:36 a.m. that same day, the People faxed a copy of the notice of presentment to defense counsel. Defendant never thereafter served upon the People a written notice of intent to testify before the grand jury. Under these circumstances, we are satisfied that defendant was provided with reasonable notice of the prospective grand jury proceedings (see People v Miller, 160 AD3d 1040, 1041 [2018], lv denied 32 NY3d 939 [2018]; People v Dorsey, 151 AD3d 1391, 1393 [2017], lv denied 30 NY3d 949 [2017]).
Defendant further challenges County Court's Sandoval ruling, which directed that the People would be permitted to cross-examine defendant, should he testify, on convictions for assault in the third degree and criminal possession of a controlled substance in the third degree from 1994, as well as a 1997 conviction for criminal sale of a controlled substance in the third degree, but that they could not question him on more recent convictions for resisting arrest and attempted sexual abuse in the first degree. However, because he failed to object to the ruling at the close of the hearing, defendant's argument is not preserved for our review (see People v Nunez, 160 AD3d 1225, 1226 [2018]; People v Pittman, 160 AD3d 1130, 1130 [2018], lv denied 31 NY3d 1151 [2018]). Were we to consider the issue, we would find it to be without merit. Although the 1994 and 1997 convictions were remote in time, their age does not automatically disqualify them from being used to impeach defendant's credibility (see People v Gray, 84 NY2d 709, 712 [1995]; People v Portis, 129 AD3d 1300, 1303 [2015], lvs denied 26 NY3d 1088, 1091 [2015]; People v Wright, 38 AD3d 1004, 1005-1006 [2007], lv denied 9 NY3d 853 [2007]). Furthermore, the three prior convictions at issue demonstrated defendant's willingness to place his own interests above that of society and, thus, were probative of his credibility (see People v [*4]Cherry, 149 AD3d 1346, 1348 [2017], lv denied 29 NY3d 1124 [2017]; People v Martin, 136 AD3d 1218, 1219 [2016], lv denied 28 NY3d 972 [2016]). Although it would have been reasonable for County Court to employ a Sandoval compromise by precluding inquiry into the facts underlying the convictions, were this issue properly before us, we would find no abuse of discretion in County Court's ruling (see People v Mattis, 108 AD3d 872, 875 [2013], lvs denied 22 NY3d 957 [2013]; People v Muniz, 93 AD3d 871, 875 [2012], lv denied 19 NY3d 965 [2012]; People v Mitchell, 57 AD3d 1308, 1311-1312 [2008]).
Nor do we find that defendant received ineffective assistance of counsel. "New York's constitutional requirement of effective assistance of counsel is met when 'the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation'" (People v Gross, 26 NY3d 689, 693 [2016], quoting People v Benevento, 91 NY2d 708, 712 [1998]). Here, defense counsel, among other things, made cogent opening and closing statements, thoroughly cross-examined the People's witnesses, successfully argued for the preclusion of inculpatory evidence and advanced a clear defense strategy aimed at discrediting the girlfriend and challenging the People's constructive possession case. Even if defense counsel should have requested a circumstantial evidence charge, we find that, viewed in totality, the representation afforded to defendant was meaningful (see People v Spencer, 152 AD3d 863, 868 [2017], lv denied 30 NY3d 983 [2017]; People v Ramos, 133 AD3d 904, 909 [2015], lvs denied 26 NY3d 1143, 1149 [2016]). Given that "our state standard . . . offers greater protection than the federal test" and the state standard was satisfied here, defendant's claim of ineffective assistance of counsel under the US Constitution also fails (People v Caban, 5 NY3d 143, 156 [2005]; see People v Ramos, 48 AD3d 984, 987-988 [2008], lvs denied 10 NY3d 938 [2008], cert denied 556 US 1110 [2009]).
Defendant's remaining arguments require little discussion. County Court issued a proper constructive possession charge to the jury and did not, as defendant asserts, omit the word "sufficient" when instructing the jury as to the level of control that is required over the area in question. Indeed, in conformity with the relevant pattern jury instruction, County Court instructed that "a person has tangible property in his constructive possession when that person exercises a level of control over the area in which the property is found, or over the person from whom the property is seized, sufficient to give him the ability to use or dispose of the property" (emphasis added; see CJI2d[NY] Physical and Constructive Possession; see generally People v Torres, 68 NY2d 677, 679 [1986]). Finally, given defendant's criminal history, we do not find defendant's sentence to be harsh or excessive (see People v Cherry, 149 AD3d at 1348; People v Oliver, 135 AD3d at 1191). To the extent that any of defendant's remaining contentions have not been addressed, they have been reviewed and found to lack merit.
Lynch, J.P., Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The home exception embodied in Penal Law § 265.03 (3), which provides that possession of a loaded firearm within one's own home generally does not constitute a violation of that subdivision, is inapplicable to defendant, given that he has been previously convicted of a crime (see People v Jones, 22 NY3d 53, 57-59 [2013]; see also Penal Law § 265.02 [1]).

Footnote 2: There is simply no merit to defendant's argument that the firearms cannot be considered loaded within the meaning of Penal Law § 265.03 (3) because the associated ammunition was found separate from the firearms (see Penal Law § 165.00 [15]; People v Gordian, 99 AD3d 538, 538 [2012], lv denied 20 NY3d 1061 [2013]).