People v Demellier (2019 NY Slip Op 05717)





People v Demellier


2019 NY Slip Op 05717


Decided on July 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 18, 2019

108475

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JOSHUA T. DEMELLIER, Appellant.

Calendar Date: May 28, 2019

Before: Egan Jr., J.P., Lynch, Clark, Devine and Pritzker, JJ.


Pamela B. Bleiwas, Ithaca, for appellant, and appellant pro se.
Weeden A. Wetmore, District Attorney, Elmira (William D. VanDelinder of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from a judgment of the County Court of Chemung County (Hayden, J.), rendered July 1, 2015, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, criminal use of a firearm in the first degree, assault in the second degree and assault in the third degree.
Defendant was charged in a four-count indictment with attempted murder in the second degree, criminal use of a firearm in the first degree and assault in the second degree arising from the shooting of victim A and assault in the third degree based on defendant striking victim B in the head. Following a jury trial, defendant was convicted as charged. Thereafter, defendant was sentenced to concurrent prison terms of 25 years, followed by five years of postrelease supervision, for his convictions of attempted murder in the second degree and criminal use of a firearm in the first degree, and to lesser concurrent prison terms for his remaining convictions [FN1]. Defendant appeals.
We affirm. Defendant argues that the verdict was against the weight of the evidence, because there was no credible evidence to identify him as the perpetrator of the crimes charged or to show that he intended to cause the death of victim A. "When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and[, if not,] then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, we consider the evidence in a neutral light and defer to the jury's [*2]credibility assessments" (People v Gill, 168 AD3d 1140, 1140-1141 [2019] [internal quotation marks and citations omitted]; see People v Hackett, 167 AD3d 1090, 1091-1092 [2018]).
As relevant here, a conviction for attempted murder in the second degree requires the People to prove that, with intent to cause the death of another, the defendant engaged in conduct that tended to effect the commission of that crime (see Penal Law §§ 110.00, 125.25 [1]; People v Greenfield, 167 AD3d 1060, 1061 [2018], lv denied 32 NY3d 1204 [2019]). To support a conviction for criminal use of a firearm in the first degree, the People must show that the defendant committed a class B violent felony offense, such as attempted murder in the second degree (see Penal Law § 70.02 [1]), and "display[ed] what appear[ed] to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law § 265.09 [1] [b]). To support a conviction for assault in the second degree, the People are required to prove that, "[w]ith intent to cause physical injury to another person, [the defendant] cause[d] such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). As to assault in the third degree, the People are required to establish that, "[w]ith intent to cause physical injury to another person, [the defendant] cause[d] such injury to such person or to a third person" (Penal Law § 120.00 [1]).
The altercation at issue occurred around 9:00 p.m. on June 1, 2014 outside a residence on Sullivan Street in the City of Elmira, Chemung County, where defendant and the victims were attending a party. A scuffle broke out between defendant and another guest that the two victims and the homeowner attempted to stop. Hearing the commotion, the bartender at a lounge next door looked out the window and observed a man — who she identified as defendant at trial — wearing a "lime green shirt" and a "light hat with lime green trim" arguing with another man, victim B. The bartender explained that defendant walked back toward the residence, only to return and strike victim B, knocking him unconscious. She then observed defendant pointing a gun in victim B's face. The bartender explained that she could identify defendant because it was not too dark and "his cheeks and his eyes . . . stood out to [her]," as well as his shirt. Although he could not identify defendant, the bartender's brother also observed the man in a lime green shirt pointing what appeared to be a gun at victim B. Another bar patron identified defendant as wearing a lime green shirt and saw him pointing a gun at victim B, who was on the ground. The patron then saw defendant run across the street and fire the gun at victim A. The patron explained that he had seen defendant numerous times throughout the day. A neighbor also testified that she saw a man chasing another man across the street and that she "[saw] a gunshot, like a flash, and then [she] heard the pow." For his part, victim B explained that defendant went into the house and returned with what appeared to be a gun. Victim B turned to run, but then lost consciousness.
During the direct examination of victim A, he answered a few introductory questions, but then abruptly left the witness stand. He returned after a brief recess, remained unresponsive and, when asked whether he "[could] tell the jury who it was that shot [him]," he responded, "Na." The People requested another recess, but were directed to complete the questioning. Victim A again denied seeing anyone with a gun, and the direct examination concluded. The defense opted not to cross-examine victim A. After another recess, the People moved to recall victim A to the stand. The trial was recessed overnight and, over defendant's objection, victim A was recalled to the stand. Victim A then testified that, after the fight between defendant and another person was broken off, defendant went inside the house. When defendant returned, victim A heard "a bang" and observed that victim B was lying on the ground. Victim A then began to run to his car — which was parked across the street from the residence — with defendant following him. When victim A got into the car, he observed defendant standing in front of the car pointing the gun at him and then firing a shot at him. On cross-examination, victim A acknowledged that he initially declined to identify who shot him because he did not want to be in the same room with defendant, but now, he was "a little more calm" and "actually think[ing] clear."
Although a different verdict would not have been unreasonable, upon our review of the record, we find that the jury's verdict was not against the weight of the evidence. Considering the [*3]circumstances, including the place and manner in which defendant shot at victim A, we find that this evidence, viewed in a neutral light, supports the inference that he intended to kill victim A (see People v Reese, 166 AD3d 1057, 1058-1060 [2018], lv denied 33 NY3d 953 [2019]; People v Perkins, 160 AD3d 1455, 1456 [2018], lvs denied 31 NY3d 1148, 1151 [2018]). We are similarly unpersuaded by defendant's contention that the witnesses did not credibly identify him as the perpetrator of the crimes. Victim A identified defendant as the person who shot him, and his testimony was corroborated by the testimony of the bar patron. Although victim A admitted to initially stating that he did not know who shot him, the inconsistencies in his testimony were fully explored on cross-examination and do not render his testimony unworthy of belief or establish a basis upon which to disturb the jury's resolution of these credibility issues (see People v Mitchell, 57 AD3d 1308, 1309 [2008]). As for victim B, he observed defendant come toward him with a gun, the bartender witnessed the assault, and the bartender's brother, as well as the bar patron, saw defendant standing over and pointing a gun at victim B. Considering the evidence in a neutral light and according deference to the jury's ability to evaluate credibility, we find that the verdict was not against the weight of the evidence (see People v Rashid, 166 AD3d 1382, 1384 [2018], lv denied 32 NY3d 1208 [2019]; People v Wright, 22 AD3d 873, 876 [2005], lvs denied 6 NY3d 755, 761 [2005]).
Defendant also contends that he was denied a fair trial when the People were allowed to recall victim A. He further argues that he was denied the right to confront victim A because victim A refused to cooperate during cross-examination. We find defendant's contentions to be unpersuasive. County Court acted within its discretion in allowing the People to recall victim A, as the People had not yet rested their case. Victim A was clearly an important witness and was questioned regarding the incident and the reasons for his inconsistent testimony (see People v Rostick, 244 AD2d 768, 769 [1997], lv denied 91 NY2d 929 [1998]; see also People v Brown, 111 AD3d 1385, 1387 [2013], lv denied 22 NY3d 1155 [2014]). Our review of the record further shows that, although victim A was combative, he answered the relevant questions posed by defense counsel (see generally People v Chin, 67 NY2d 22, 28 [1986]; People v Rodriguez, 24 AD3d 394, 395 [2005], lv denied 6 NY3d 837 [2006]). As such, County Court did not err by refusing to grant defendant's motion to strike victim A's testimony. Defendant's remaining contentions, to the extent not specifically addressed herein, have been examined and found to be lacking in merit.
Egan Jr., J.P., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The sentence was to run concurrently to the sentences imposed in connection with two other indictments.