■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

JEROME HICKMAN, Appellant.—Judgment reversed on the law and new trial granted. Memorandum: During defendant's trial, after which he was convicted of two counts of murder in the second degree, his mother and brother were called as witnesses for the prosecution. Although the brother had given statements to the police and to the Grand Jury and the mother had given a statement to police relating admissions that defendant had made to them about the crime, at trial they testified that they were unable to recall anything defendant had said to them. Over the objection of defense counsel, the prosecutor was allowed to impeach the witnesses with their prior statements (CPL 60.35 [1]). The trial court relied on footnote 5 in *People v Fuller* (50 NY2d 628, 638). This was error. The failure of the witnesses to recall the events in question does not constitute affirmative damage to the prosecution case that would permit impeachment under the statute *(People v Fitzpatrick,* 40 NY2d 44, 52; *People v Toney,* 132 AD2d 955, *lv denied* 70 NY2d 938; *People v Navarette,* 131 AD2d 326, *lv denied* 70 NY2d 705; *People v Johnson,* 108 AD2d 1059; *People v Gilbert,* 99 AD2d 657). The jury was correctly instructed that the out-of-court statements were to be considered for impeachment only and did not constitute evidence in the case. However, the court in *Fitzpatrick (supra,* at 50) discussed the application of that principle and the difficulty of avoiding "having juries, when actually confronted with dramatically cogent impeaching evidence, treat it as though it were in fact direct evidence of guilt or innocence in criminal trials". This can only have been the purpose of the prosecution in this case because on summation the prosecutor acknowledged that the physical evidence was weak and emphasized that the most cogent and material evidence was the reluctance of defendant's brother to testify. He argued that this reluctance was significant direct evidence that defendant intentionally killed Paul Gross. It is apparent that that argument depends for its meaning on having the jury infer not only that the purported inability to recall was not credible, but also that defendant had in fact made admissions. Thus, the prejudice to defendant from this improper impeachment is clear, and it should not be permitted.

In addition, it was improper to allow defendant's brother to be impeached by his out-of-court testimony after he denied telling his mother about defendant's admissions. Because this was a statement concerning an act by the witness rather than by defendant, it did not bear on a material element of the prosecution's case *(see, People v Johnson, supra,* at 1060).

These errors cannot be considered harmless because the circumstantial evidence against defendant was not overwhelming *(see, People v Crimmins,* 36 NY2d 230, 241); although defendant was seen in the victim's Cadillac on the night of the killing, there was no evidence placing defendant at the crime scene.

All concur, except Green and Balio, JJ., who dissent and vote to affirm, in the following memorandum.

Green and Balio, JJ. (dissenting). We cannot subscribe to the majority view that the failure of two key prosecution witnesses to recall defendant's admissions to them did not constitute affirmative damage to the People's case so as to permit the prosecutor to impeach the witnesses with their prior statements under CPL 60.35 (1). The trial testimony of each witness reveals more than a mere lapse of memory. Defendant's brother, after reviewing his Grand Jury testimony, recalled everything about the morning of the murder except the defendant's admission of the crime. He recalled the names of the people he was with, all of the bars he visited, and the streets on which defendant drove his car. Despite these details, however, defendant's brother claimed he could not recall defendant's admission because he was too drunk at the time defendant allegedly made it. Defendant's mother claimed she could not recall any statements defendant made to her about the crime because she was "sick" and "out of [her] mind." She denied being sick on the day after the murder or while testifying at trial, however, and was able to recall her activities and defendant's presence in the family home on the morning of the murder when defendant allegedly admitted committing the crime.

In our view, this testimony reveals a conscious effort on the part of each witness to frustrate the People's case. It is incredible that each witness could recall several details of the date in question but could not recall that defendant, a member of their family, made admissions of the crime. Such testimony is so "patently evasive and contumacious" that it affirmatively damaged the People's case *(People v Fuller,* 50 NY2d 628, 638, n 5). In the absence of eyewitnesses or other inculpatory evidence, the testimony of defendant's brother and mother regarding defendant's admission was the core of the People's case *(cf., People v Sampson,* 145 AD2d 910). Thus, the testimony of each witness was "upon a material issue of the case which tends to disprove the position" of the People (CPL 60.35 [1]). Moreover, the court properly instructed the jury that the impeachment evidence could be considered only on

the issue of credibility and not as evidence-in-chief (CPL 60.35 [2]). Under these circumstances, the court properly permitted the prosecutor to impeach defendant's brother with his Grand Jury testimony and his signed statement to the police and to impeach defendant's mother with her signed statement which, in each instance, recited that defendant admitted stabbing the victim *(see, People v Fitzpatrick,* 40 NY2d 44, 51-52; *People v Davis,* 112 AD2d 722, 723, *lv denied* 66 NY2d 918; *People v Winchell,* 98 AD2d 838, 841, *affd* 64 NY2d 826). (Appeal from judgment of Supreme Court, Monroe County, Kennedy, J.— murder, second degree.) Present—Dillon, P. J., Green, Pine, Balio and Lawton, JJ.