■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN RODWELL, Appellant. [667 NYS2d 839] —White, J. Appeal from a judgment of the County Court of Albany County (Sheridan, J.), rendered August 3, 1994, upon a verdict convicting defendant of two counts of the crime of criminal possession of a weapon in the third degree.

In the early morning of March 30, 1993, the police responded to a call that a domestic disturbance involving a man with a gun was taking place in an apartment located in the City of Albany that was occupied by Lea Johnson, defendant's girlfriend. When the police arrived at the scene, they encountered defendant, Johnson, Johnson's mother (Desiree Graham) and the mother's boyfriend. According to the police, Johnson pointed out defendant and stated that "he has a gun on him"; however, a pat down search disclosed that he was unarmed. Further investigation revealed that Graham was going to drive defendant to his home and that he had placed some clothes in the trunk of her car. With Graham's consent, the police searched the trunk, discovering a .22-caliber handgun in the pocket of a coat that ostensibly belonged to defendant. Defendant was arrested and subsequently indicted, tried and convicted of two counts of the crime of criminal possession of a weapon in the third degree. Defendant appeals.

On direct examination, the People twice asked Johnson if she observed anything in defendant's hand as he was removing

his clothes from her closet. Despite having her recollection refreshed, she replied that she did not remember and could not recall if he had anything in his hand. During cross-examination defense counsel asked Johnson if she had seen a gun in the apartment on March 30, 1993. She unequivocally stated that she never had. On redirect, the People repeated the question asked on cross-examination, eliciting the same response. The People then proceeded to impeach Johnson with a prior inconsistent written statement and her Grand Jury testimony, wherein she related that she saw defendant with a gun in her apartment. Defendant contends that County Court erred in permitting the People to impeach Johnson.

Before a party in a criminal trial may impeach its own witness, such witness must give testimony upon a material issue of the case which tends to disprove the party's position or affirmatively damages its case (see, CPL 60.35 [1]; see also, People v Saez, 69 NY2d 802, 804). Further, the damaging testimony must be elicited on direct examination (see, People v Broomfield, 163 AD2d 403, lv denied 76 NY2d 891; People v Mercado, 162 AD2d 722, 723, lv denied 77 NY2d 841; People v Zenger, 134 AD2d 640, lv denied 70 NY2d 1012) and must consist of something more than the witness's inability to recall the events in question (see, People v Fitzpatrick, 40 NY2d 44, 52; People v Lawrence, 227 AD2d 893, 894).

At first blush, it does not appear that the dictates of CPL 60.35 (1) were satisfied in this case. The People nevertheless argue that they were properly allowed to impeach Johnson because her patently evasive and contumacious responses on direct examination were clearly intended to affirmatively damage their case. This argument is derived from a footnote in People v Fuller (50 NY2d 628, 638, n 5), citing People v Schenkman (46 NY2d 232) as being illustrative of such conduct. In Schenkman, the Court of Appeals termed the defendant's testimony contemptuous because her equivocations, denial of recollection, evasions and hopeless weaving and dodging yielded responses that were answers in form only and were tantamount to no answers at all (id., at 238). While Johnson does not appear to have been entirely forthright during her direct examination, her testimony cannot be equated with the defendant's testimony in Schenkman. Indicative of this is that, during Johnson's direct examination, County Court denied the People's application to declare her a hostile witness. Thus, we find that the People failed to sustain their argument on this point.

The People further argue that there was compliance with

CPL 60.35 (1) because Johnson's damaging testimony was elicited on her redirect testimony. Aside from the fact this was accomplished by merely repeating a question propounded on cross-examination, as previously mentioned, the damaging testimony must be elicited on direct examination (*see*, Prince, Richardson on Evidence § 6-423, at 431 [Farrell 11th ed]). Moreover, the acceptance of the People's argument would permit the easy circumvention of the rules underpinning CPL 60.35 (1) and broaden its reach, a result that would be contrary to the intent of the Legislature that the statute be given a narrow reading (*see, People v Fitzpatrick*, 40 NY2d 44, 48-53, *supra*). Accordingly, we find this argument unpersuasive.

Alternatively, the People maintain that if County Court erred in permitting them to impeach Johnson, such error was harmless. We disagree. When, as here, the People proceed on a theory of constructive possession, without the benefit of the statutory presumptions embodied in Penal Law § 265.15 and where the weapon is found in an area where no one individual could be said to have dominion and control of it, the People have a heavy burden in establishing constructive possession (*see, People v Brown*, 181 AD2d 1041, 1042). In our view, as confirmed by the nature of the questions posed to the court by the jury during its deliberations, the fact that the weapon was found in the trunk of Graham's car, together with the lack of direct evidence linking the weapon and coat to defendant, created a close question as to whether he exercised dominion and control over the weapon (*see*, 10 Zett, NY Crim Prac § 93.6 [1]). Taking this into account, we conclude that there was not overwhelming proof of defendant's guilt and, accordingly, reverse (*see, People v Crimmins*, 36 NY2d 230, 241-242).

Cardona, P. J., Crew III, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the judgment is reversed, on the law, and indictment dismissed.