■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HERMAN BASS, Appellant. [681 NYS2d 101] —Mikoll, J. P. Appeals (1) from a judgment of the Supreme Court (Sheridan, J.), rendered March 8, 1995 in Schenectady County, upon a verdict convicting defendant of the crime of robbery in the second degree, and (2) by permission, from an order of said court, entered May 17, 1995 in Schenectady County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.

By indictment filed May 12, 1994, defendant and two accomplices were charged with the December 9, 1993 robbery of Paul Scavone, manager of the Ponderosa Steakhouse in the Town of Rotterdam, Schenectady County, and a December 24, 1994 armed robbery in the City of Schenectady. Following a jury trial, defendant was acquitted of the latter crime but convicted of the Ponderosa robbery. He appeals from that judgment of conviction as well as the order denying his CPL 440.10 motion to vacate the judgment. We affirm.

The record discloses that on December 9, 1993 at approximately 10:30 P.M., Scavone closed the Ponderosa restaurant and was carrying approximately $2,400 in a money bag to his car. He was accosted by two men who knocked him to the ground, ransacked his pockets and fled with the money bag. Investigation by the Schenectady police led to the questioning of Marc Blaydes, who admitted his participation in the robbery and identified two of the other three participants as defendant and Ramon Davila. Police then questioned Davila who gave a sworn statement implicating himself, Blaydes, defendant and a fourth man identified only as "Tim".

Defendant was initially charged with the Ponderosa robbery in a felony complaint filed in the Town of Rotterdam Justice Court and was subsequently indicted, with Blaydes and Davila, on May 12, 1994. Prior to the commencement of defendant's trial, Blaydes and Davila entered guilty pleas to the Ponderosa robbery and allocuted their own and defendant's involvement therein.[1]

At trial, Scavone testified to the time, location and details of the robbery, but was unable to identify any of the perpetrators. Blaydes testified that in the early evening of December 9, 1993, he drove defendant and Davila to plan the route to be taken to the Ponderosa. Later that evening, in response to a telephone call from defendant, he returned to defendant's home, arriving there shortly after 9:00 P.M. He then drove defendant, Davila and an individual named Tim to the restaurant. Defendant, Davila and Tim left the vehicle and returned a short time later with a money bag. Returning to defendant's house, Blaydes was given $300 for driving the others to the restaurant. Blaydes also testified that present at defendant's residence before and after the robbery was defendant's live-in girlfriend, Pamela Carnegie.

When Davila was called to testify, however, he stated that he committed the Ponderosa robbery alone and that defendant did not participate. Surprised by this development, the prosecutor sought permission to treat Davila as a hostile witness and to impeach him with his prior written statement and plea allocution, both of which implicated defendant. Over defendant's objection, Supreme Court granted the prosecutor's request and both statements were admitted into evidence.

Defendant argues that the verdict was against the weight of the evidence in that the accomplice testimony of Blaydes was

---

1. Davila also pleaded guilty to, and implicated defendant in, the December 24, 1993 Schenectady robbery.

not sufficiently corroborated, and that Supreme Court erred in permitting the use of Davila's prior statements for cross-examination. We disagree. More than sufficient corroborative evidence was produced to satisfy the requirements of CPL 60.22 (1), which provides that a defendant may not be convicted solely upon accomplice testimony "unsupported by corroborative evidence tending to connect the defendant with the commission" thereof. This requirement is satisfied by the production of evidence from an independent source, which evidence need not establish commission of the crime but rather need only "connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth" (*People v Daniels*, 37 NY2d 624, 630).

Blaydes' testimony was corroborated by Scavone as to the date, time and location of the robbery, as well as the theft of the money bag. It was further corroborated by the testimony of Carnegie that during an evening in early December 1993, two men known to her only as Ramon (Davila) and Tim came to the house and that defendant then called Blaydes and directed him to come over. Sometime around 10:00 P.M., the four men left the house in Blaydes' car and returned approximately one hour later and went to the rear of the house. After the other three men left, defendant, who was unemployed, gave her $100 cash.

Further corroboration is found in the testimony of James Williams, a 25-year acquaintance of defendant, who related a conversation with defendant in February 1994. Williams, who was aware that Davila and Blaydes had spoken with police concerning the Ponderosa robbery, told defendant that he was going to visit Davila, whereupon defendant gave him $10 to give to Davila, and directed him to "find out for me from [Davila] whether or not he told the police that I was with him the night we stuck up the Ponderosa Restaurant".

Neither do we find error in Supreme Court's ruling allowing the People to impeach its own witness, Davila, with his prior inconsistent statements, or the receipt of those statements into evidence. CPL 60.35 (1) expressly permits such a procedure when a witness called by a party at trial gives testimony which affirmatively damages that party's position (*see, People v Hilts*, 221 AD2d 812, *lv denied* 87 NY2d 922). Here, Davila had implicated defendant in a sworn statement to the police as well as during his own plea allocution made several days before the commencement of defendant's trial. His trial testimony denying defendant's participation not only surprised the People but certainly tended to disprove their case (*see, People v Fitz-*

*patrick*, 40 NY2d 44, 51). In compliance with CPL 60.35 (2), Supreme Court instructed the jury at the time the statements were admitted that they were received solely for the limited purpose of impeaching Davila's trial testimony and not for the truth of the matters contained therein. The court repeated this instruction in its final charge to the jury (*see*, *People v Donahue*, 195 AD2d 619).

Finally, defendant claims that he was denied the effective assistance of counsel at critical stages of the proceeding, and that he was denied the right to appear and testify before the Grand Jury which voted the indictment. This claim, asserted both on direct appeal and in a postjudgment CPL 440.10 motion, is factually and legally without merit. Defendant was arraigned upon the felony complaint in the Town of Rotterdam Justice Court on March 4, 1994 and the Public Defender's office was assigned to represent him. On March 18, 1994, defendant received a CPL 190.50 notice from the District Attorney relative to both the December 9, 1993 Ponderosa robbery and the December 24, 1993 Schenectady crime.

Although defendant concedes these facts, he attaches significance to the fact that he was unsuccessful in speaking with an attorney about the Ponderosa charge until March 23, 1994, and that he received the CPL 190.50 notice 10 days after the People began presenting the case to the Grand Jury. Although evidence relating to the Ponderosa robbery was presented to the Grand Jury on March 8, 1994, the indictment was not returned until May 12, 1994.[2] There is no indication, indeed defendant has not even alleged, that at any time after receiving the CPL 190.50 notice on March 18, 1994 and the filing of the indictment on May 12, 1994 he communicated his desire to testify before the Grand Jury. Moreover, a motion to dismiss an indictment on the ground of a CPL 190.50 violation must be made no later than five days after arraignment on the indictment. Defendant neither so moved in a timely fashion nor included any such claim in his subsequently filed omnibus motion, thereby waiving any challenge to the indictment upon

---

**2.** In his *pro se* supplemental and reply briefs, defendant has included a letter from the Town of Rotterdam Justice Court, stating in part that "[a] preliminary hearing scheduled for March 28, 1994 was not held in as much [*sic*] as a certification pursuant to section 180.80 (2) (b) of the Criminal Procedure Law * * * dated March 24, 1994 was filed with our Court". Even were this letter not dehors the record on appeal, any ambiguity it creates with respect to the date of the indictment becomes academic in view of the provisions of CPL 190.50 (5) (c) and our strict construction thereof (*see*, *People v Hodges*, 246 AD2d 824; *People v Brown*, 227 AD2d 691, *lv denied* 88 NY2d 980; *People v Fletcher*, 178 AD2d 776, *lv denied* 79 NY2d 1000).

this ground (*see,* CPL 190.50 [5] [c]). Accordingly, denial of his CPL 440.10 motion was proper.

We have considered defendant's remaining contentions and find them to be without merit.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment and order are affirmed.