■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE ANDUJAR, Appellant. [736 NYS2d 159] —Spain, J.P. Appeal from a judgment of the County Court of Greene County (Pulver, Jr., J.), rendered March 14, 2000, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree, criminal possession of ·a weapon in the third degree and promoting prison contraband in the first degree.

Following a jury trial, defendant was convicted as charged of attempted murder in the second degree and other crimes for his June 9, 1999 attack of another inmate, Chimu Thomas, at the Coxsackie Correctional Facility in Greene County. The

---

incident occurred shortly after 8:00 A.M. as defendant was being escorted into the facility mess hall for breakfast. A correction officer testified that he observed defendant—whom he knew—step out of line and walk toward Thomas who was seated at a nearby table with his back facing defendant. Defendant was observed making repeated stabbing motions into Thomas' back; Thomas then stood up, raised his arms in a defensive position and began backing away from defendant while defendant pursued him and repeatedly stabbed Thomas in the midsection with a long metal shank. Two other correction officers working in the mess hall at the time also testified that they witnessed defendant, whom they identified, repeatedly stabbing Thomas with the shank. The officers eventually subdued defendant, recovered the shank which was tied to defendant's wrist, and Thomas received emergency medical care, including surgery for his many serious injuries. Upon his convictions, defendant was sentenced, in part, as a second violent felony offender to two concurrent, determinate terms of 20 years' imprisonment for attempted murder in the second degree and assault in the first degree. Defendant appeals, and we affirm.

First, although we find that the error was harmless, we agree with defendant's contention that County Court erred in permitting the People at trial to impeach Thomas with his prior grand jury testimony. Thomas testified before the grand jury that he knew defendant, that he had had a verbal confrontation with defendant the day before this attack, which ended with his challenging defendant and spitting in defendant's face, and he identified defendant as his attacker. At trial, after the testimony of the People's first witness, an eyewitness correction officer, the People called Thomas to the stand. While Thomas testified that he was injured in a mess hall fight on June 9, 1999, he indicated that prior to and on that date he did not know and was not familiar with defendant. After Thomas was shown his grand jury testimony in an effort to refresh his recollection (*see,* CPL 60.35 [3]), he again testified he did not know defendant prior to June 9th, and the court granted the People's requests to declare Thomas a hostile witness.

Over defense counsel's objections, the People were then permitted to impeach Thomas (*see,* CPL 60.35 [1], [2]) by reading portions of his grand jury testimony, thereby revealing to the jury that he had previously testified that he knew defendant and had an argument with defendant the day before this attack. After each question and answer was read, Thomas testified that he did not recall having so testified at the grand jury.

We find that this use of Thomas' grand jury testimony for impeachment purposes was improper under CPL 60.35 (1).

A party may impeach its own witness only if that witness gives testimony upon a material issue or fact which "tends *to disprove* the party's position or *affirmatively damages* the party's case" (*People v Saez*, 69 NY2d 802, 804 [emphases supplied]; *see*, CPL 60.35 [1]; *People v Fitzpatrick*, 40 NY2d 44, 50-52; *People v Dukes*, 278 AD2d 589, *lv denied* 96 NY2d 799; *People v Rodwell*, 246 AD2d 916, 917). Here, Thomas merely denied knowing defendant before the day of this attack, neutral testimony which failed to corroborate or bolster the People's case (*see*, *People v Fitzpatrick*, *supra*, at 52). At that point, Thomas was not asked whether—nor did he deny that—defendant was his attacker or if defendant resembled the attacker (*cf.*, *People v Bynum*, 275 AD2d 251, 251, *lv denied* 95 NY2d 961; *People v Bass*, 255 AD2d 689, 690, *lv denied* 93 NY2d 966; *People v Mercado*, 162 AD2d 722, *lv denied* 77 NY2d 841; *People v De Jesus*, 101 AD2d 111, 113, *affd* 64 NY2d 1126; *People v Mattison*, 97 AD2d 621, 622-623). Indeed, Thomas was not asked to identify the attacker and did not identify the assailant as someone else. While Thomas' denial of previously knowing defendant may have failed to provide the People with evidence of defendant's motive, the prosecutor did not mention a motive in his opening statement (*see*, *People v Dukes*, *supra*, at 590) and defendant's motive was not raised in the testimony of the only witness who had testified; thus, motive was not a material issue in the case. Thus, Thomas' testimony at that point, whatever its truth or forthrightness, did not affirmatively damage the People's case or tend to disprove the People's position that defendant was the assailant (*cf.*, *People v Hilts*, 221 AD2d 812, *lv denied* 87 NY2d 922), a situation comparable to those cases in which a witness is unable at trial to recall the events in question (*see*, *People v Fitzpatrick*, *supra*, at 52; *People v Dukes*, *supra*, at 590; *People v Rodwell*, *supra*, at 917; *People v Hickman*, 148 AD2d 937, 938, *affd* 75 NY2d 891) or where a witness claims that he or she did not see the perpetrator or know his or her identity (*see*, *People v Brazzeal*, 172 AD2d 757, 759; *People v Comer*, 146 AD2d 794, *lv denied* 73 NY2d 976).

Further, under CPL 60.35 (1), the damaging testimony must be elicited on direct examination (*see*, *People v Rodwell*, *supra*, at 917). As such, the fact that later in the trial Thomas was called as a defense witness and testified that defendant was not his attacker but, rather, had tried to help him could not justify the People's earlier impeachment of Thomas with his grand jury testimony. However, in view of the truly overwhelm-

ing direct evidence of defendant's guilt of all the charges, including three credible eyewitness accounts establishing his guilt beyond a reasonable doubt, we find that there is no significant probability that the jury would have acquitted defendant had it not been for the error in impeaching Thomas (*see, People v Crimmins*, 36 NY2d 230, 241-242; *see also, People v Saez*, 69 NY2d 802, 804, *supra; People v Dukes*, 278 AD2d 589, 590, *supra*). County Court instructed the jury at length that Thomas' prior testimony did not constitute evidence in chief of the charged crimes and could only be considered for the purpose of impeaching his credibility (*see*, CPL 60.35 [2]; *see also, People v Bass*, 255 AD2d 689, 692, *supra*), and the District Attorney made no direct reference to Thomas' grand jury testimony in his summation (*cf., People v Lawrence*, 227 AD2d 893, 894).

Defendant also contends that he is entitled to vacatur of the sentence and remittal for resentencing because the prosecutor, in the course of reviewing defendant's criminal history on the record during the sentencing proceeding, made a factual statement regarding defendant's prior violent felony conviction in Bronx County which was not accurate. Specifically, the prosecutor stated that defendant's 1982 second degree murder conviction was for "intentionally shooting an individual in the head three times at point blank range." Defendant asserted that there was "no document on record before Bronx County Supreme Court" containing such facts and that he "believe[d]" that the prosecutor's statement "was wrong." County Court responded "[a]ll right" and, when asked, defendant himself then stated that "there is no reason I shouldn't be sentenced."

We find no basis to disturb the sentence. First, defendant offered no proof that the 1982 murder did not involve a shooting as described, and he consented to being sentenced after registering his objection. Second, there is no indication that County Court relied on the prosecutor's characterization of defendant's predicate conviction (*cf., People v Naranjo*, 89 NY2d 1047, 1049), and defendant's presentence report, while not providing details, clearly indicates that the 1982 conviction was for felony murder (Penal Law § 125.25 [2], [4]), not intentional murder. Further, defendant admitted the prior violent felony conviction (*see*, CPL 400.15 [2], [4]) and does not challenge that aspect of his sentencing. In view of the foregoing, we cannot conclude that defendant was sentenced based upon " ' "materially untrue" assumptions or "misinformation" ' " (*People v Naranjo, supra*, at 1049, quoting *United States v Pugliese*, 805 F2d 1117, 1123, quoting *Townsend v Burke*, 334 US 736, 741).

Carpinello, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.