(January 14, 2016)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EL KAHLIEM MYRICK, Also Known as COOP, Also Known as NAJI, Also Known as NAJI COOP, Appellant. [22 NYS3d 691]—

Clark, J. Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered October 1, 2013, upon a verdict convicting defendant of the crimes of robbery in the first degree and robbery in the second degree.

Defendant and a codefendant, Jordan Renak, were charged in a five-count indictment with three counts of robbery in the first degree, one count of robbery in the second degree and one count of criminal possession of a weapon in the second degree, which stemmed from their involvement in a robbery and shooting that occurred on October 26, 2012 in the area of 166 Third Avenue in the City of Albany. In his pretrial omnibus motion, defendant moved to, among other things, suppress oral statements that he made to the police during a police interrogation, which motion County Court denied. Following a jury trial, defendant was acquitted of two counts of robbery in the first degree and one count of criminal possession of a weapon in the second degree and convicted of one count of robbery in the first degree (count one) and one count of robbery in the second degree (count four). Defendant was sentenced to an aggregate prison term of seven years, to be followed by five years of post-release supervision. Defendant appeals.

Initially, we address defendant's contention that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence because the People failed to provide corroborating evidence to support the testimony of the accomplice that implicated him in the crime. The standard for reviewing the legal sufficiency of evidence in a criminal case is "whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [citation omitted]).

As relevant here, to prove that defendant was guilty of rob-

bery in the first degree, the People had to establish that defendant "forcibly [stole] property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [c]ause[d] serious physical injury to any person who [was] not a participant in the crime" (Penal Law § 160.15 [1]). To prove that defendant was guilty of robbery in the second degree the People were required to establish that defendant "forcibly [stole] property" and that "[h]e [was] aided by another person actually present" (Penal Law § 160.10 [1]). "A person forcibly steals property when he or she uses or threatens the immediate use of physical force upon another person for the purpose of . . . compelling the owner of such property or another person to deliver up the property" (*People v Griffin*, 122 AD3d 1068, 1069 [2014], *lv denied* 25 NY3d 1164 [2015] [internal quotation marks, brackets and citations omitted]; *see* Penal Law § 160.00 [2]; *People v Gordon*, 23 NY3d 643, 649-650 [2014]).

Particular to defendant's appellate contentions, a person may be found guilty of robbery under a theory of accomplice liability when he or she, with the intent to rob, "solicits, requests, commands, importunes, or intentionally aids [another] person to engage in . . . conduct" that constitutes robbery (Penal Law § 20.00; *see People v Vicioso*, 116 AD3d 1250, 1251 [2014]; *People v Bush*, 75 AD3d 917, 918 [2010], *lv denied* 15 NY3d 919 [2010]). Although "[a] defendant may not be convicted solely on the basis of accomplice testimony that lacks the support of 'corroborative evidence tending to connect the defendant with the commission of [the charged] offense'" (*People v Rodriguez*, 121 AD3d 1435, 1439 [2014], *lv denied* 24 NY3d 1122 [2015], quoting CPL 60.22 [1]), the amount of additional evidence necessary is only that which "may reasonably satisfy the jury that the accomplice is telling the truth" (*People v Reome*, 15 NY3d 188, 192 [2010] [internal quotation marks and citation omitted]; *see People v Rodriguez*, 121 AD3d at 1439). Importantly, "the role of the additional evidence is only to connect the defendant with the commission of the crime, not to prove that he [or she] committed it" (*People v Hudson*, 51 NY2d 233, 238 [1980]).

At trial, the People presented the testimony of the victim, who testified that at about 7:30 p.m. on the evening in question, Eugene Royal called him, asking him to come over to Third Avenue to "drop off" a few bags of marihuana. The victim arrived at the parking lot, waited for Royal for approximately 10 to 15 minutes, then left after hearing from Royal that he had been delayed. While sitting in his car and waiting for Royal

in the parking lot a second time, the victim saw four people wearing hooded sweatshirts with the hoods pulled up, not including Royal, approach him. One of the four individuals asked the victim whether he had marihuana to sell and, as the victim tried to get the marihuana, one person grabbed him and pointed a gun at him. The victim was then pulled out of the car, punched in the back of his head and pushed further back to the curb. A tussle then occurred between the victim and one person and, in the chaos that ensued as the victim tried to get back in his car, the victim was shot in the abdomen, for which he underwent emergency surgery. The victim testified that he did not know any of the people involved in the crime except for Royal—who arrived in the parking lot at some point during the robbery—and that he did not see the face of the person who pointed the gun at him, but did see that such person wore a white hooded sweatshirt with the word "Hollister" on it.

Rahjahmiere Cole, who pleaded guilty to participating in the robbery, testified that he, Renak and Royal were at a basketball court near the Third Avenue apartments at about 7:30 p.m. on the night in question. They then met up with defendant, who had a gun on him, at the Third Avenue apartments and planned to lure the victim to the parking lot and rob him of some marihuana. Cole testified that the victim showed up in the parking lot, then left and came back. According to Cole, after the victim arrived the second time, he, Renak, Royal and defendant robbed the victim. Cole further testified that a tussling between Royal and the victim ensued inside the victim's car and that defendant was also in the victim's car and the victim was shot. Finally, Cole testified that he did not know what happened with the gun after the robbery and shooting.

Upon cross-examination, Cole admitted that his plea deal with the People was conditioned on him providing cooperation and truthful testimony in defendant's trial. Cole testified that, during his interview with the police, he initially stated that he was going to buy marihuana from the victim, not to rob him, but that he later changed his story and told the police that the intent was to rob the victim rather than to purchase marihuana. Cole testified that he did know the victim before the crime and did not "really know" who participated in the robbery, but that he heard some people on the street during the time of the crime say that a person named "Coop" was involved in the robbery.[1] Cole further testified that, during the police interview, he identified defendant from a photo array as a

---

**1.** Additional testimony at trial established that defendant was also known as "Coop" or "Naji Coop."

person he knew named "Coop," not as a person he saw involved in the robbery. Lastly, Cole testified that he knew Royal and that he saw Royal in the victim's car right before the victim was shot. Upon redirect examination, Cole testified that defendant was with him at the crime scene when the victim was robbed. Cole reiterated that defendant had a gun on him.

Royal testified for the People that he only called the victim to buy marihuana. Royal testified that he was in the victim's car at the time of the robbery, but denied participating in the crime and stated that he did not know the identity of the perpetrators. Royal was properly impeached by the prosecutor with his prior grand jury testimony that indicated that he and defendant participated in the robbery and that defendant had the gun.

Victor Pizzola, a detective for the Albany Police Department, testified that he was summoned by the Community Response Unit to collect a handgun located in Albany. According to Pizzola, the information regarding the location of the gun had come from Royal. Pizzola also testified that he responded to defendant's house to execute a search warrant but did not recover any evidence related to the crime. Robert Mulligan, a detective from the Albany Police Department Forensic Investigations Unit, testified that he collected DNA samples and a large amount of fingerprints from the crime scene and later found that the fingerprints collected from the outside of the victim's vehicle belonged to Renak. Defendant's fingerprints were not found on the victim's car. DNA analysis results showed that Royal's DNA was found on the gun, only the victim's DNA was found on the car and samples collected from the crime scene matched the DNA from the victim.

Christopher Cornell, a detective for the Albany Police Department, testified that he interviewed defendant, who stated that, at the time of the shooting, he was shopping in a local store accompanied by his aunt, two teenaged girls and a toddler and that he was wearing a white, hooded sweatshirt. Video surveillance footage from that store was admitted into evidence and depicted a group of five people, who appeared the same as defendant described, entering the store at approximately 6:20 p.m. and leaving at approximately 6:45 p.m. Cornell also searched defendant's residence, which was located in the Third Avenue apartments, but did not find a white hooded sweatshirt. Cornell also testified that surveillance video footage from the Albany Housing Authority depicted what occurred in front of defendant's apartment and in the nearby parking lot where the robbery and shooting had occurred. As illustrated by the video,

at approximately 7:28 p.m., three individuals—two wearing light color hooded sweatshirts and one wearing a black hooded sweatshirt—exited from defendant's apartment. At approximately 7:40 p.m., four individuals—two wearing light color hooded sweatshirts and two wearing black hooded sweatshirts—exited from defendant's apartment and, after momentarily lingering, walked in the direction of the parking lot. At approximately 7:42 p.m., four individuals—two wearing light color hooded sweatshirts and two wearing black hooded sweatshirts—walked toward the victim's car in the parking lot. At approximately 7:45 p.m., a fifth individual, wearing a black hooded sweatshirt, walked toward the victim's car. Immediately thereafter, a tussling ensued outside of the car after which all five individuals ran away and the car rolled, coming to rest in a ditch.

On his direct case, defendant presented the testimony of two of his neighbors. The first neighbor testified that she witnessed the incident from her porch—which had a view of the parking lot—and watched a man with a black hooded sweatshirt jump into a car and fight with the driver. She saw three people that she recognized as her neighbors standing near the car right before hearing a loud boom and two gun shots, at which point everyone ran. She testified that she did not see defendant at any point during the incident. The second neighbor, who knew defendant prior to the day in question, testified to seeing three men that he did not recognize in the area right before the robbery. He also testified that he had not seen defendant on that day and that he had not heard any gun shots. Further, this neighbor testified that it was common to see people wearing white hooded sweatshirts in his neighborhood.

Viewing the trial evidence in a light most favorable to the People, we find legally sufficient evidence to support defendant's convictions. Contrary to defendant's appellate contention, the testimony of Cole was adequately corroborated by witness testimony and physical evidence connecting defendant with the commission of the robbery. Specifically, Cole testified that, before meeting defendant, at about 7:30 p.m., Renak, Royal and he were at a basketball court near the Third Avenue apartments. This testimony was corroborated by the second neighbor's testimony and the video footage showing three men exiting defendant's apartment. Cole testified that an altercation between Royal and the victim ensued inside the victim's car, which was corroborated by the first neighbor's testimony and by the victim's testimony. Lastly, Cole testified that the victim showed up twice in the parking lot, which was corroborated by the victim's testimony.

As to defendant's claim that the verdict was against the weight of the evidence, where, as here, an alternative verdict would not have been unreasonable, we must, "like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d at 495 [internal quotation marks and citation omitted]). According deference to the credibility determinations made by the jury and, after reviewing and weighing the evidence in the record in a neutral light, we are unpersuaded by defendant's contention that the jury's verdict was against the weight of the evidence (*see People v Moyer*, 75 AD3d 1004, 1006 [2010]).

We do, however, find error in County Court's ruling permitting Cornell to identify defendant as a person depicted in the store surveillance video. In this regard, earlier in the proceedings County Court had ruled that, to the extent that the People were going to offer such surveillance footage into evidence, they were precluded from offering testimony identifying defendant in such footage. Cornell then testified on direct examination that he obtained the video surveillance footage from the store where defendant had claimed to have been shopping at the time of the robbery and described a group of five people that entered at approximately 6:20 p.m. and left at approximately 6:45 p.m., approximately one hour before the robbery. Upon the People's question, "And the group being [defendant], three women and a toddler," Cornell answered, "That's correct." Defendant objected to the question and the answer, which was overruled by County Court. Inasmuch as this testimony violated County Court's prior ruling because it identified defendant as being the individual in the video who was accompanied by three women and a toddler, it should have been precluded.[2]

Based upon the record before us, County Court's evidentiary error in permitting Cornell's identification testimony of defend-

---

**2.** "A lay witness may give an opinion concerning the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury" (*People v Russell*, 165 AD2d 327, 333 [1991], *affd* 79 NY2d 1024 [1992] [citation omitted]; *accord People v Sanchez*, 95 AD3d 241, 249 [2012], *affd* 21 NY3d 216 [2013]; *see People v Coleman*, 78 AD3d 457, 458 [2010], *lv denied* 16 NY3d 829 [2011]). Here, the detective had met with defendant on a single occasion more than two weeks after the commission of the crime, there was no evidence that defendant had changed his appearance prior to trial, and the record is devoid of any other circumstances suggesting that the jury—which had ample opportunity to view defendant—would be any less able than the detective to determine whether defendant was, in fact, the individual depicted in the video

ant in the surveillance video cannot be deemed harmless. Specifically, under the particular factual circumstances of this case, the evidence of defendant's guilt, although legally sufficient to support the jury's verdict, was not overwhelming given the lack of direct evidence linking defendant to the crime and the conflicting witness testimony regarding defendant's presence at the crime scene (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]; *People v Gray*, 125 AD3d 1107, 1108-1109 [2015]; *People v Bellamy*, 26 AD3d 638, 641 [2006]; *People v Rodwell*, 246 AD2d 916, 918 [1998]). Accordingly, we reverse and remit for a new trial.

Finally, we find defendant's argument that County Court erred in denying his motion to suppress to be without merit. Defendant's remaining contentions are unpreserved for our review.

Peters, P.J., McCarthy, Egan Jr. and Devine, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Albany County for a new trial on counts one and four of the indictment.

(*See People v Coleman*, 78 AD3d at 458). Thus, County Court's prior ruling was proper.