People v Williams (2025 NY Slip Op 03087)

People v Williams

2025 NY Slip Op 03087

Decided on May 21, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 21, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
VALERIE BRATHWAITE NELSON
HELEN VOUTSINAS
PHILLIP HOM, JJ.

2022-06087
 (Ind. No. 6824/18)

[*1]The People of the State of New York, respondent,
v
Lewis Williams, appellant.

Patricia Pazner, New York, NY (Yvonne Shivers and Joshua M. Levine of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Keith Dolan, and Isaac Rounseville of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Evelyn J. Laporte, J.), rendered July 21, 2022, convicting him of criminal possession of a weapon in the second degree (two counts) and reckless endangerment in the first degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and a new trial is ordered.
After a jury trial, the defendant was convicted of, inter alia, criminal possession of a weapon in the second degree based on his possession of a loaded firearm, arising from a shooting that took place in front of a deli on Kings Highway in Brooklyn in May 2018.
CPL 270.20(1)(b) allows a party to challenge a prospective juror for cause if the juror "has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial." Where such a challenge is made, "a juror who has revealed doubt, because of prior knowledge or opinion, about [his or] her ability to serve impartially must be excused unless the juror states unequivocally on the record that [he or] she can be fair" (People v Bludson, 97 NY2d 644, 645 [internal quotation marks omitted]; see People v Arnold, 96 NY2d 358, 362). "If there is any doubt about a prospective juror's impartiality, trial courts should err on the side of excusing the juror, since at worst the court will have 'replaced one impartial juror with another'" (People v Arnold, 96 NY2d at 362, quoting People v Culhane, 33 NY2d 90, 108 n 3).
Here, during voir dire, a prospective juror repeatedly indicated that he would hold the defendant's failure to testify against him. The prospective juror maintained that he was unable to "promise" that his decision would not be affected if the defendant did not testify at trial. Since the prospective juror made statements that cast doubt on his ability to render an impartial verdict under the proper legal standards and did not, upon further inquiry, provide unequivocal assurances that he would be able to render a verdict based solely upon the evidence adduced at trial, the Supreme Court should have granted the defendant's for-cause challenge (see id.; People v Rose, 73 AD3d 1091, 1093; People v Goodwin, 64 AD3d 790, 792; People v Kenner, 8 AD3d 296, 297). Furthermore, the court's failure to grant the defendant's for-cause challenge constituted reversible error because [*2]the defendant exhausted all of his peremptory challenges prior to the completion of jury selection (see CPL 270.20[2]; People v Torpey, 63 NY2d 361; People v Goodwin, 64 AD3d at 792). Accordingly, the defendant is entitled to a new trial.
Since a new trial is required, we note that the Supreme Court improvidently exercised its discretion in allowing a police detective to identify the defendant as the individual depicted in a surveillance video. Generally, "'lay witnesses must testify only to the facts,' and not to their opinions and conclusions drawn from the facts,' as it is the jury's province 'to draw the appropriate inferences arising from the facts'" (People v Tyme, 222 AD3d 783, 784, quoting People v Russell, 165 AD2d 327, 332, affd 79 NY2d 1024). In determining whether to permit this testimony, a court must consider "whether the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful" (People v Mosley, 41 NY3d 640, 648 [internal quotation marks omitted]). In making this assessment, courts may consider (1) the witness's general level of familiarity with the defendant's appearance, (2) whether the witness's familiarity spanned an extended period of time and variety of circumstances, (3) whether the witness was familiar with the defendant's appearance at the time the surveillance footage was taken, and (4) whether the witness was familiar with the defendant's customary manner of dress or clothing (see id. at 648-649). Here, there was no basis for the court to conclude that the police detective was more likely than the jury to correctly determine whether the defendant was depicted in the surveillance video (see People v Tyme, 222 AD3d at 784). The police detective testified that he spent a total of 10 to 15 minutes with the defendant. While there was testimony that the defendant's appearance had changed prior to the trial, through weight loss and cutting his hair, "the record is devoid of any other circumstances suggesting that the jury——which had ample opportunity to view [the] defendant——would be any less able than the detective to determine whether [the] defendant was, in fact, the individual depicted in the video" (id., quoting People v Myrick, 135 AD3d 1069, 1074 n 2).
Contrary to the defendant's contention, the limited testimony of a police detective, who provided the circumstances of his obtaining information from an eyewitness following the shooting, which led to the defendant's designation as a suspect, "did not constitute improper bolstering, as it was offered for the relevant, nonhearsay purpose of explaining the investigative process and completing the narrative of events leading to the defendant's arrest" (People v Lides, 200 AD3d 990, 991, citing People v Ludwig, 24 NY3d 221, 231, and People v Rosario, 100 AD3d 660, 661). Moreover, as the same eyewitness had testified regarding his prior familiarity with the defendant at the time of the shooting, as well as the facts that the eyewitness had viewed a photo array pursuant to a "double blind" procedure and that he was no longer able to make an identification of the defendant in court due to the passage of time and injuries that had undermined his memory faculties, it was proper for the Supreme Court to permit the police detective to testify as to the eyewitness's out-of-court identification of the defendant from the photo array (see CPL 60.25; People v Jamerson, 68 NY2d 984, 986; People v Bayron, 66 NY2d 77, 81).
Additionally, the Supreme Court providently exercised its discretion in admitting into evidence a compilation video containing surveillance video footage, records, and photographs obtained from exhibits that had been admitted into evidence at trial (see People v Fernandez, 210 AD3d 693, 696). The probative value of the presentation outweighed its prejudicial effect (see People v Caldavado, 78 AD3d 962, 963).
In light of our determination, the defendant's contention that the sentence imposed was excessive has been rendered academic (see People v Lowery, 127 AD3d 1109, 1110) and we do not reach the defendant's remaining contentions.
DILLON, J.P., BRATHWAITE NELSON, VOUTSINAS and HOM, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court