People v Cannon (2025 NY Slip Op 03814)

People v Cannon

2025 NY Slip Op 03814

Decided on June 25, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
BARRY E. WARHIT
JANICE A. TAYLOR
DONNA-MARIE E. GOLIA, JJ.

2021-06059
 (Ind. No. 2133/18)

[*1]The People of the State of New York, respondent,
v
Jamik Cannon, appellant.

John Healy, Uniondale, NY, for appellant.
Anne T. Donnelly, District Attorney, Mineola, NY (Autumn S. Hughes and Jared A. Chester of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Robert A. Schwartz, J.), rendered July 23, 2021, convicting him of murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
Following a jury trial, the defendant was convicted of murder in the second degree, assault in the first degree, and related weapon possession crimes, arising from a shooting that occurred in Hempstead on October 19, 2018, resulting in the death of one victim and injuries to another victim.
The defendant's contention that he was deprived of a fair trial because the Supreme Court allowed three police witnesses and a confidential informant to identify him at trial in certain surveillance video footage is partially unpreserved for appellate review (see CPL 470.05[2]; People v Franzese, 189 AD3d 1068, 1068) and, in any event, without merit.
Identification testimony from a lay non-eyewitness may only be admitted where (1) "the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful," and (2) "the jury needs the witness's assistance" (People v Mosley, 41 NY3d 640, 648-649 [internal quotation marks omitted]; see People v Lowe, 237 AD3d 1225, 1227). In determining whether the jury needs the witness's assistance, courts may consider, among other things, whether the defendant's appearance changed between the time of the surveillance video and the trial, and the clarity of the image (see People v Mosley, 41 NY3d at 649; People v Williams, ____ AD3d ____, 2025 NY Slip Op 03087). "Where an image is clear enough—that is, not so crystal clear that the jury could identify a person as capably as any witness, and not so obscure that no witness could readily identify the individual—this factor may weigh in favor of admission" (People v Mosley, 41 NY3d at 649). Prior to admitting lay non-eyewitness identification testimony, a court should inquire as to the basis of the witness's familiarity outside the presence of the jury in a separate hearing or voir dire (see id. at 650). "The party offering the witness—in most cases the People—bears the burden of establishing that their testimony would both be helpful and necessary" [*2](id.). Further, "as a best practice, it would be appropriate for the trial court to provide cautionary jury instructions, both at the time of the testimony and during the final charge, explaining to the jury that lay non-eyewitness identification testimony is mere opinion testimony that they may choose to accept or reject, and reminding the jurors that because they are the finders of fact, it is their opinion as to whether the defendant is depicted in the surveillance footage that matters" (id.).
Applying these principles here, the Supreme Court providently exercised its discretion in admitting the identification testimony from Detective John Rodgers and the confidential informant. Contrary to the defendant's contention, the People demonstrated that those witnesses had sufficient contact with the defendant to achieve a level of familiarity that rendered their opinion helpful to the jury (see People v Trowell, 172 AD3d 1112, 1113; People v Jones, 161 AD3d 1103). Moreover, the surveillance video images were "not so crystal clear that the jury could identify a person as capably as any witness, and not so obscure that no witness could readily identify the individual" (People v Mosley, 41 NY3d at 649), which, under the circumstances of this case, weighed in favor of the admission of the testimony (see id.). Further, the court provided a limiting instruction, explaining to the jury that it could consider the opinion testimony relating to the video as an aid, but was free to accept or reject that opinion, and that it was "ultimately [the jury's] decision as to who the individuals are depicted in these videos."
However, the Supreme Court improvidently exercised its discretion in admitting the identification testimony from the remaining two witnesses. The People failed to meet their burden of demonstrating that those witnesses had sufficient contact with the defendant to achieve a level of familiarity that rendered their opinion helpful to the jury (see id. at 650-651; People v Lowe, 237 AD3d at 1227; People v Lewis, 225 AD3d 896, 898). Nevertheless, under the circumstances of this case, the error in admitting this testimony was harmless. The evidence of the defendant's guilt of the crimes of which he was convicted, without reference to the error, was overwhelming. The evidence at trial included surveillance video footage of the shooting, which showed one of the two shooters placing his hand on the hood of a car while fleeing the crime scene, and evidence that the defendant's DNA profile matched the DNA profile collected from the hood of that car. Additionally, the People presented, among other things, surveillance video footage showing the defendant engaged in a physical altercation with the murder victim three days before the shooting, evidence indicating that, after the shooting, the defendant had attempted to burn clothing that he and his codefendant had worn that day, and testimony that, two to three days after the shooting, the defendant was overheard telling his codefendant that they needed to get rid of the gun. Accordingly, there was overwhelming evidence of the defendant's guilt, and no significant probability that the error contributed to the defendant's convictions (see People v Lowe, 237 AD3d at 1227; People v Tyme, 222 AD3d 783, 784). Furthermore, the error did not deprive the defendant of his fundamental right to a fair trial (see People v Crimmins, 36 NY2d 230, 238; People v Tyme, 222 AD3d at 784).
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt of assault in the first degree beyond a reasonable doubt (Penal Law § 120.10[1]). Moreover, upon the exercise of our independent factual review power (see CPL 470.15[5]), we are satisfied that the verdict of guilt on that count was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's contention that the Supreme Court erred in permitting a Facebook records custodian to testify virtually is unpreserved for appellate review (see CPL 470.05[2]). In any event, the defendant's contention is without merit. Under the circumstances of this case, including, inter alia, the prevalence of COVID-19 at the time of the defendant's trial, the court providently exercised its discretion in permitting the records custodian to testify virtually (see Judiciary Law § 2-b[3]; see also People v Wrotten, 14 NY3d 33; People ex rel. Tucker v Brann, 194 AD3d 947, 947-948).
The defendant's contention that the Supreme Court erred by admitting into evidence certain statements made by his codefendant is unpreserved for appellate review (see CPL 470.05[2]; People v Jin Zheng, 127 AD3d 890, 890). In any event, while the statements should not have been [*3]admitted under the coconspirator exception to the hearsay rule (see People v Caban, 5 NY3d 143, 148), the error was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that the error contributed to the defendant's convictions (see People v Jin Zheng, 127 AD3d at 891).
The defendant's contentions regarding the Supreme Court's Sandoval ruling (see People v Sandoval, 34 NY2d 371) are unpreserved for appellate review (see CPL 470.05[2]; People v Gilliam, 229 AD3d 565, 566). In any event, the court's Sandoval ruling was a provident exercise of discretion, as it constituted an appropriate compromise which balanced the probative value of the proffered evidence against the prejudice to the defendant (see People v Hayes, 97 NY2d 203, 208; People v Cooper, 224 AD3d 925, 926).
The defendant's contentions regarding the Supreme Court's Molineux ruling (see People v Molineux, 168 NY 264) are unpreserved for appellate review (see CPL 470.05[2]; People v Cooper, 224 AD3d at 926). In any event, the defendant's contentions are without merit (see People v Gamble, 18 NY3d 386, 398; People v Dorm, 12 NY3d 16, 19).
Contrary to the defendant's contention, he was not deprived of the effective assistance of counsel under the New York Constitution, since, viewing defense counsel's performance in its totality, counsel provided meaningful representation (see People v Benevento, 91 NY2d 708, 712). Further, the defendant was not deprived of the effective assistance of counsel under the United States Constitution (see Strickland v Washington, 466 US 668).
The defendant's remaining contentions are without merit.
BARROS, J.P., WARHIT, TAYLOR and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court